# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

KRIS JARRELL, Individually
and on behalf of those similarly situated,

      Plaintiffs,

                           Case No.: 6:22-cv-00990-CEM-EJK

      v.

HYUNDAI MOTOR AMERICA,
HYUNDAI MOTOR COMPANY, and
HYUNDAI MOTOR MANUFACTURING
ALABAMA, LLC,

      Defendants.
_____/

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Kris Jarrell, Individually and on behalf of all those similarly situated ("the Class"), by and through undersigned counsel, files this First Amended Complaint, and alleges against Defendants, Hyundai Motor America, Hyundai Motor Company, and Hyundai Motor Manufacturing Alabama, LLC ("Defendants" or "Hyundai"), as follows:

## NATURE OF THE ACTION

1.     When properly functioning, seat belts are designed to prevent or lessen the risk of injury to the occupants of a vehicle in the event of crash. Unfortunately, for consumers of over two hundred thousand Hyundai vehicles, their seat belt components could seriously harm passengers during a crash instead of saving them.

2.  On May 19, 2022, Hyundai issued a safety recall for approximately 239,000 Hyundai vehicles in the United States equipped with seat belt pretensioners that could explode, projecting metal fragments through the vehicle which could strike and injure the vehicle's occupants.  The cause of these exploding seat belt pretensioners remains unknown.[1]

3.  Significantly, Defendants have had actual knowledge of the defect in the seat belt pretensioners (hereinafter "Seat Belt Defect") since at least September 2021, when the National Highway Traffic Safety Administration ("NHTSA") informed Hyundai of a crash incident involving a 2021 Hyundai Elantra—a vehicle now part of the safety recall—where the driver-side seat belt pretensioner deployed abnormally, propelling metal fragments through the cabin of the Elantra and injuring a passenger's leg.  Following this incident, in September 2021, the NHTSA instructed Hyundai to assess the incident.[2]

4.  In December 2021, Hyundai identified a second incident involving a 2020 Hyundai Accent in Puerto Rico in which a passenger was injured by the Seat Belt Defect.[3]  Similarly, in February 2022, Hyundai identified yet another incident

---

[1] LaChance, D., *Hyundai Recalls 239,000 Vehicles Over Exploding Seat Belt Pretensioners*, RDN (May 30, 2022), https://www.repairerdrivennews.com/2022/05/30/hyundai-recalls-239000-vehicles-over-exploding-seat-belt-pretensioners/.

[2] Shepardson, D., *Hyundai to Recall 281,000 North American Vehicles Over Exploding Part*, REUTERS (May 24, 2022), https://www.reuters.com/business/autos-transportation/hyundai-recall-239000-us-vehicles-over-exploding-part-2022-05-24/.

[3] *Id.*

involving a 2022 Hyundai Elantra in Singapore where the front left-side seat belt pretensioner exploded causing injuries to one of the vehicle's rear passengers.[4]

5.      Defendants knew or should have known of the Seat Belt Defect much earlier due to pre-production testing, failure mode analysis, and reports to authorized dealers, repair centers, and complaints to the NHTSA.

6.      Despite having knowledge of the exploding seat belt pretensioners, Hyundai concealed this information, delayed issuing a recall, and still to this day has not sent notification letters to owners of the defective vehicles.

7.      Because of Hyundai's unfair, misleading, deceptive, and/or fraudulent business practices in failing to disclose the Seat Belt Defect to Plaintiff and putative Class members, owners and lessees of the recalled Hyundai vehicles have suffered losses in money and property.  Had Plaintiff and the putative Class members known of the safety defect in the seat belts, they would not have purchased or leased those vehicles, or would have paid substantially less for them.  In addition, seat belt failure requires expensive repairs and other miscellaneous costs.  As a direct result of the Seat Belt Defect and Hyundai's concealment, owners of the recalled Hyundai vehicles have a lower market value and are inherently worth less than they otherwise would be.

8.      Plaintiff therefore brings this class action on behalf of herself, and all persons similarly situated who have purchased or leased the following Hyundai vehicles: Model Year 2019–2022 Hyundai Accents, Model Year 2021–2023 Hyundai

---

[4] *Id.*

Elantras, and 2021–2022 Hyundai Elantra Hybrids (hereinafter referred to as the "Class Vehicles") to redress Defendants' misconduct. Plaintiff and the Class seek recovery of damages and repair under state consumer-protection statutes and express and implied warranties, as well as reimbursement of related expenses and diminished value of the Class Vehicles.

## PARTIES, JURISDICTION, AND VENUE

### A. **Plaintiffs**

9.    Plaintiff, Kris Jarrell, is a resident and citizen of Volusia County, Florida. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #KMHLM4AG3MU162767)—which has the Seat Belt Defect. Through Plaintiff's exposure to Hyundai, she was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason she purchased a Hyundai Elantra. Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff. Plaintiff would not have purchased the vehicle, or would have paid less for it, had she known about the Seat Belt Defect.

10.    Plaintiff, Robert Bomer, is a resident and citizen of Broward County, Florida. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #5NPL4AG1MH029639)—which has the Seat Belt Defect. Through Plaintiff's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased a Hyundai Elantra. Despite touting the dependability

4

and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

11.     Plaintiff, Kathleen Falvo, is a resident and citizen of Hillsborough County, Florida. Plaintiff is the owner of a 2022 Hyundai Elantra (VIN #KMHLN4AG6NU341724)—which has the Seat Belt Defect.  Through Plaintiff's exposure to Hyundai, she was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason she purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had she known about the Seat Belt Defect.

12.     Plaintiff, Timothy Cordial, is a resident and citizen of Santa Clara County, California.   Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #KMHLR4AF8MU176933)—which has the Seat Belt Defect.  Through Plaintiff's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have

purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

13.    Plaintiff, Anthony Joseph, is a resident and citizen of Suffolk County, New York. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #KMHLN4AJ8MU006183)—which has the Seat Belt Defect.  Through Plaintiff's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

14.    Plaintiff, Nathaniel Segura, is a resident and citizen of Cook County, Illinois. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #5NPLP4AG7MH021688)—which has the Seat Belt Defect.  Through Plaintiff's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

**B. Defendants**

15.     Defendant Hyundai Motor America ("HMA") is a California corporation with its headquarters and principal place of business at 10550 Talbert Avenue, Fountain Valley, CA 92708. HMA is the United States sales, marketing, and distribution subsidiary of its Korean parent company, Hyundai Motor Company. HMA is responsible for manufacturing, assembling, importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Hyundai vehicles in the United States.

16.     Defendant Hyundai Motor Company ("HMC") is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business in Seoul, South Korea.  HMC is the parent corporation of HMA and advertises all Hyundai models sold by HMA.

17.     Defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA") is a Delaware limited liability company headquartered in Montgomery Alabama with its principal place of business at 700 Hyundai Blvd., Montgomery, AL 36105.  HMMA is a subsidiary of HMC and is responsible for the manufacturing and assembly of certain Hyundai vehicles, including Hyundai Elantras.

**C. Jurisdiction and Venue**

18.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 members of the Class.  Members of the Class are citizens of

states different from Defendants, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims under 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction.

19.   This Court has personal jurisdiction over Defendants because they intentionally avail themselves of the rights and privileges of conducting business in the State of Florida where members of the Class reside, and they have continuous and systematic contacts with Florida and those other states, owing to Defendants' advertising and sales targeting citizens in all fifty states, the District of Columbia, and U.S. territories.

20.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as substantial acts in furtherance of the alleged improper conduct giving rise to the claims herein occurred within the Middle District of Florida. Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous Hyundai dealers doing business in this District. Defendants' actions have caused harm to hundreds of members of the Class residing in Florida, including Plaintiff Kris Jarrell.

## GENERAL FACTUAL ALLEGATIONS

21.     Hyundai sells millions of cars throughout the United States.  In 2021 alone, Hyundai sold more than 700,000 vehicles in the United States.[5]

22.     Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

**A. <u>Hyundai Marketed the Class Vehicles as Dependable and Safe</u>.**

23.     Hyundai marketed, distributed, and warranted the Class Vehicles in the United States in a uniform manner.

24.     For decades, Hyundai has touted the superior safety of its vehicles.  For example, since 1999, Hyundai has encouraged its consumers to "buy a Hyundai and add ten years to your life."



---

[5] *Hyundai Motor America Reports December Q4 and 2021 Sales*, HYUNDAI MEDIA CENTER (Jan. 4, 2022), https://www.hyundainews.com/en-us/releases/3475#:~:text=2021%20Results,best%20year%20in%20company%20history.

25.    In its more recent marketing, Hyundai uses tag lines such as "America's Best Warranty," "the Hyundai Assurance," "five-star rating," "advanced safety," "2022 top safety pick," "safety rating that are untouched and elite," and encourages consumers to buy "a car that has the best safety ratings" on the market (i.e., a Hyundai).





Buy a car that has the best safety ratings.

Hyundai is proud to be awarded national safety ratings that are untouched and elite.  Ask yourself, if at the point of a family death, you'd consider the cost worth the loss. I think for all of us the answer is no - but so many families don't plan ahead or consider that in the top 10 causes for death in America is unintentional injuries.  Make that sacrifice for safety today.

26.    Hyundai tells its customers to ask themselves "if at the point of a family death, you'd consider the cost worth the loss" and encourages them to "[m]ake th[e] sacrifice for safety today" and buy a Hyundai.  Ironically, it is Hyundai who failed to sacrificed safety for profits and market ratings.

27.     In addition to its "untouched and elite" safety, Hyundai further boasts that its vehicles make driving "easier" with "[c]onvenience that helps make commutes and long drives more bearable."  The Seat Belt Defect does just the opposite—making the thought of driving on long drives or commutes worrisome and unbearable.



## Making your drive easier.

Convenience that helps make commutes and long drives more bearable by safely taking over the tedious parts of driving when you want them to.

28.     Plaintiff and the Class cannot now receive the benefit of the bargain. Hyundai Class Vehicles do not make driving easier or convenient and they certainly have not lived up to their promise of being the best in safety, among other false promises.  Rather than "add[ing] ten years to [their] life," Plaintiff and the Class are at an increased risk for crashes, severe injury, and death.

29.     Defendants' brochures for Class Vehicles make similar claims regarding, safety, reliability, durability, and performance of their vehicles.

30.     Hyundai developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Vehicles.

31.     In contrast to Hyundai's marketing campaign, the Class Vehicles are equipped with seat belts that may explode and result in metal shards flying through the vehicle's cabin, creating an inherently dangerous safety risk with potentially disastrous consequences for Plaintiff and members of the Class.

32.     Defendants knew or should have known of the Seat Belt Defect but failed to rectify it.

**B.  <u>The Seat Belt Pretensioner Defect</u>.**

33.     Seat belts, and particularly seat belt pretensioners, may be the most significant component of any vehicle in terms of safety.

34.     The Class Vehicles—like all other cars—are equipped with seat belts. The typical three-point seat belt is comprised of a latch, a latch plate, a height adjuster, an extender, and a pretensioner.

35.     The pretensioner is the part of the system that draws back the seat belt to keep it firm while driving and is responsible for locking the belt during a collision to keep the driver or passenger in position.

36.     To do this, the pretensioner utilizes an explosive charge to initiate a concealed piston once the sensors detect that an accident has occurred.  The piston proceeds to drive the spool of seat belt fabric rapidly around, thereby removing any slack from the seat belt.

37.     On May 19, 2022, the NHTSA issued a Part 573 Safety Recall Report ("Recall Report") documenting the recalled vehicles models, the number of potentially involved vehicles, a description of the defect and safety risk, a description of the cause of defect, a description of the remedy offered by Hyundai, and a recall schedule.[6]

---

[6]  *See Part 573 Safety Recall Report 22V-354*, NHTSA (May 19, 2022), https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V354-9112.PDF.

38.     According to the NHTSA's Recall Report, the total number of Hyundai vehicles potentially involved in the United States is 239,000.[7]  It is also estimated that an additional 41,000 Hyundai containing the same Seat Belt Defect have been purchased or leased in Canada.[8]

39.     The Recall Report states that Defendant HMA determined that "[t]he subject vehicles are equipped with driver/passenger pyrotechnic-type seat belt pretensioners that may deploy abnormally during a crash" and that "[a] specific root cause has not yet been determined."[9]

40.     According to the Recall Report, the safety risk created by the Seat Belt Defect is as follows: "An abnormal pyrotechnic pretensioner deployment **could cause metal fragments to enter the vehicle occupant compartment, which may result in injury to vehicle occupants**."[10]

41.     As a remedy, the Recall Report indicates that:

> All owners of the subject vehicles will be notified by first class mail with instructions to bring their vehicles to a Hyundai dealer to have the seat belt pretensioner's micro gas generator and delivery pipe secured with a cap to prevent potential abnormal deployment. This remedy will be offered at no cost to owners for all affected vehicles, regardless of whether the affected vehicles are still covered under Hyundai's New Vehicle Limited Warranty. Additionally, Hyundai will provide owners of affected vehicles reimbursement for out-of-pocket expenses incurred to obtain a remedy for the recall condition in accordance with the reimbursement plan submitted to NHTSA on February 24, 2022.[11]

---

[7] *Id.*
[8] *See supra* note 2.
[9] *See supra* note 7.
[10] *Id.* (emphasis added).
[11] *Id.*

42.     Nevertheless, HMA does not plan to provide notice to Class Vehicle owners until July 15, 2022.[12]

### C. **Despite Having Knowledge of the Seat Belt Defect, Defendants Continued to Market the Class Vehicles as Safe and Reliable.**

43.     On September 15, 2021, NHTSA's Office of Defects Investigation informed Defendant HMA of a crash incident involving a 2021 Hyundai Elantra in which "the driver-side seat belt pretensioner allegedly deployed abnormally causing metal fragments to enter the rear cabin and result[ed] in injury to an occupant's leg."[13]

44.     Following this notice, the Office of Defects Investigation requested Hyundai's assessment of the incident. *Id.*

45.     On September 30, 2021, Defendant HMA provided an update on its investigation of the 2021 Elantra incident. *Id.* HMA stated it had plans to inspect the subject Elantra on October 8, 2021 and that it would be "targeting seat belt pretensioners produced in the same production lot as the incident pretensioner for further study into root cause and manufacturing/design defect identification." *Id.*

46.     On October 6, 2021, HMA's North American Safety Decision Authority ("NASDA") convened and determined that while the cause of the abnormal deployment was unknown, HMA would "conduct a safety recall of vehicles equipped with pretensioners produced within the same production lot to conduct a detailed part return analysis." *Id.*

---

[12] *Id.*
[13] *Recall 229 Attachment A—Chronology of Events Leading up to Defect Decision*, NHTSA (May 19, 2022), https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V354-7726.pdf.

47.     On December 3, 2021, Defendant HMC was notified of a second incident involving a 2020 Hyundai Accent in which a seat belt pretensioner that was "produced thirteen months prior to the suspect production lot" identified in the initial recall (Recall 211).  *Id.*

48.     On December 10, 2021, HMA re-convened and decided to expand Recall 211 to include 2021–2021 Hyundai Accent vehicles equipped with pretensioners from the earlier suspect production lot.  *Id.*

49.     On February 15, 2022, HMC notified HMA of a new incident involving a 2022 Hyundai Elantra in which the "front left-side seat belt pretensioner deployed abnormally causing injuries to a rear passenger."  *Id.* The pretensioner in this vehicle was from a different production lot than the prior incidents and lots targeted in Recalls 211 and 219.  *Id.*

50.     On February 24, 2022, HMA re-convened for a third time and decided to conduct another recall for the 2022 Hyundai Elantras with the new suspect production lot.  *Id.*

51.     On March 25, 2022, HMA again re-convened its NASDA to proactively increase the number of recovered pretensioners for analysis and identify the root cause. *Id.*

52.     NASDA decided to conduct a new recall of Hyundai Accent and Elantra vehicles containing seat belt pretensioners from certain targeted pretensioner lots produced within approximately one (1) month before/after the identified suspect production lots associated with Recalls 211, 219, and 220.  *Id.*

53.     On March 28, 2022, investigative teams from NASO, HMC, and one of their suppliers inspected the incident 2021 Hyundai vehicle and found the crash pulse and duration data retrieved from the EDR compared similarly to the incident 2022 Hyundai Elantra vehicle's crash data.  Based on this information, HMC determined that the pretensioners used in the subject Elantra and Accent vehicles could exhibit unique deployment characteristics when compared to other models using the same pretensioners.  *Id.*

54.     In April 2022, Hyundai retained Exponent—a third-party engineering firm—to conduct metallurgical analyses on the connection between the micro gas generator and pretensioner used in the subject Hyundai Elantra and Accent vehicles and identify potential areas of stress and fracture initiation sites during deployment. *Id.*

55.     On April 20, 2022, HMA provided an update of Hyundai's investigation as described above to NHTSA's Office of Defects Investigation.  *Id.*

56.     On April 25, 2022, HMC obtained testing by design affiliates and the supplier that were successful in replicating the abnormal deployment condition in the subject Elantra and Accent vehicles.  HMC also informed of a potential remedy which would secure the micro gas generator connection with a cap and eliminate stress sites that could potentially increase the risk of an abnormal deployment.  In subsequent testing, Exponent was able confirm the effectiveness of the cap in mitigating this risk. *Id.*

16

57.    On May 11, 2022, HMA re-convened its NASDA and decided to conduct a recall of all Elantra and Accent vehicles equipped with the subject pretensioner, including those already involved in Recalls 211, 219, 220, and 223, to receive the remedy cap.  *Id.*

58.    This Recall is untimely and ineffective at remedying the significant losses, which Plaintiff and the Class have suffered.  Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs.  They did so at the expense of Plaintiff and the Class.

59.    Defendants failed to inform Class Vehicle owners and lessees at the point of sale and before purchase or lease of the Class Vehicles of the Seat Belt Defect and that it would not be replaced in the event of failure.  Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Seat Belt Defect in the Class Vehicles.

60.    Defendants had actual knowledge that Class Vehicles were experiencing seat belt pretensioner explosions due to the Seat Belt Defect.  Despite this knowledge, Defendants continued to sell Class Vehicles with the Seat Belt Defect and allowed the Class Vehicles to be driven on the road endangering Plaintiff and members of the Class.

61.    Plaintiff and Class members did not possess sufficient technical expertise to recognize symptoms of the Seat Belt Defect.  This information, however, was well known to Defendants, but not revealed.

62.     Reasonable consumers, including Plaintiff and members of the Class, would find disclosure of the Seat Belt Defect to be material.

63.     Defendants concealed the Seat Belt Defect from Plaintiff and all Class Vehicle purchasers and lessees.   Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a Seat Belt Defect that would cause flying metal shrapnel.

64.     Defendants engaged in unconscionable fraudulent commercial practices, attempting to conceal the Seat Belt Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

65.     Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information related to the Seat Belt Defect, to deceive purchasers and lessees as described herein. At the time of purchase or lease, Defendants fraudulently omitted to disclose material matters regarding the Seat Belt Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability.  Defendants fraudulently concealed from Plaintiff and members of the Class concerning the Seat Belt Defect in Class Vehicles even though Defendants knew or should have known that information concerning the Seat Belt Defect was material and central to the marketing, sale, and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiff and members of the Class.

66.     If Plaintiff and members of the Class had been informed of the Seat Belt Defect in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or paid substantially less.   If Plaintiff and members of the Class had

learned of the Seat Belt Defect in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without a major defect and were not fully informed of true characteristics and attributes of Class Vehicles. Defendants' conduct that violated the consumer fraud statutes alleged below deprived Plaintiffs and members of the Class of that remedy.

67.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff and members of the Class purchased or leased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

## CLASS ACTION ALLEGATIONS

### A. Class Definitions

68.    The proposed Nationwide Class includes all persons and entities that purchased or leased a Class Vehicle in the United States, including its territories. Plaintiffs also propose a separate State Sub-Class for Florida, which includes all persons and entities that purchased or leased a Class Vehicle in the State of Florida.

69.    The Class Vehicles include: Model Year 2019–2022 Hyundai Accents, Model Year 2021–2023 Hyundai Elantras, and 2021–2022 Hyundai Elantra Hybrids.[14]

---

[14] Plaintiffs reserve the right to supplement or amend the Class Vehicles after conducting discovery and further investigation.

70.     Excluded from the Classes are: Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and Judicial officers and their immediate family members and associated court staff assigned to this case.

71.     The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

72.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

73.     Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery and further investigation.

**B. Class Action Requirements**

74.     <u>Numerosity</u>:  Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Plaintiffs are informed and believe, based on information available regarding the nationwide sales and recalls of certain Class Vehicles, there are hundreds (if not thousands) of Class members.  The precise number of Class members is unknown to Plaintiffs but may be ascertained from the

Defendants' records and vehicle registration records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and published notice.

75.   <u>Commonality and Predominance</u>:   Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including, without limitation:

a.   Whether Defendants engaged in the conduct alleged herein;

b.   Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

c.   Whether the Class Vehicles have and were sold with the Seat Belt Defect;

d.   Whether a reasonable consumer would consider the Seat Belt Defect and its consequences to be material to the decision to purchase or lease a Class Vehicle;

e.   Whether the Seat Belt Defect constitutes a safety defect;

f.   Whether Defendants knew of the Seat Belt Defect but failed to timely disclose the problem and its consequences to Plaintiff and Class members;

g.   Whether Defendants knew or should have known about the Seat Belt Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiff and the Class;

h.   Whether Defendants omitted, concealed, or failed to disclose material facts about the Class Vehicles to Plaintiff and Class members;

i.  Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

j.  Whether Defendants have engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with the Seat Belt Defect, and any related statutes asserted herein;

k.  Whether Plaintiff and Class members overpaid for their Class Vehicles;

l.  Whether Plaintiff and Class members suffered out-of-pocket losses because of the Seat Belt Defect;

m.  Whether Defendants owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles;

n.  Whether Defendants breached their duties to Plaintiff and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

o.  Whether Defendants breached their duties to Plaintiff and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

p.  Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

q.  Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

r.  Whether Plaintiff and Class members are entitled to damages and other monetary relief and, if so, in what amount; and

s.  Whether Plaintiff and the Class are entitled to treble damages and/or punitive damages or other relief.

76.  <u>Typicality</u>:  Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured

by Defendants' wrongful conduct as described herein.  Plaintiff and the Class members suffered damages as a direct, proximate result of the same wrongful practices by Defendants.  Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.  Plaintiffs' claims are based on the same legal theories as the claims of the Class members.

77.     Adequacy:  Federal Rule of Civil Procedure 23(a)(4): Plaintiffs' and their counsel are adequate because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

78.     Superiority:  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. On information and belief, Class members can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

## TOLLING OF THE STATUTE OF LIMITATIONS

79.    Defendants have known of the Seat Belt Defect based on pre-production testing, pre-production design failure mode analysis, and production design failure mode analysis, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints.  Defendants were aware (or should have been aware) of the Seat Belt Defect in the Class Vehicles.

80.    Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem.  In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Hyundai is obligated to do.

81.    Defendants had a duty to disclose the Seat Belt Defect to consumers and NHTSA. Contrary to this duty, Hyundai concealed the Seat Belt Defect by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiff and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiff and the Class members about the truth about the Class Vehicles.

82.    Because of the highly technical nature of the Seat Belt Defect, Plaintiff and Class members could not independently discover it using reasonable diligence.

Before the retention of counsel and without third-party experts, Plaintiff and Class members lack the necessary expertise to understand the Seat Belt Defect.

83.     Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

### NATIONWIDE CLASS CLAIMS

### NATIONWIDE COUNT I
### Negligent Misrepresentation
### (on Behalf of the Nationwide Class)

84.     Plaintiff and the Class reallege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

85.     Defendants owed a duty to disclose the Seat Belt Defect and its corresponding safety risk to Plaintiff and Class members because Defendants knew or should have known of the Seat Belt Defect and the risks associated with the manifestation of the Seat Belt Defect.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while Defendants either knew or should have known that the Class Vehicles possessed the Seat Belt Defect and failed to disclose its existence and its corresponding safety hazard.

86.     Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the existence of the Seat Belt Defect exposing drivers and occupants to safety risks.  Defendants misrepresented that they would remedy any defects under the express warranties but limited their coverage to

mechanical defects.  As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

87.    The Seat Belt Defect is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Seat Belt Defect manifests, the driver may be impaled by flying metal shards or fragments that may result in death and/or serious bodily injury to the occupants.  No reasonable consumer expects a vehicle to contain a defect in design, such as the Seat Belt Defect, that can cause severe injury or death with no warning or time to take preventative measures.

88.    Plaintiff and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Seat Belt Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

89.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles with the Seat Belt Defect, Plaintiff and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## NATIONWIDE COUNT II
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq.*
### (on Behalf of the Nationwide Class)

90.     Plaintiff and the Class reallege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

91.     This Court has jurisdiction over claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332.

92.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3) as they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.  15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a warranty.

93.     Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. §§ 2301(4)–(5).

94.     The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

95.     Defendants provided Plaintiff and the other Class members with a written warranty in connection with the purchase or lease of their vehicles that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  As part of these written warranties, Defendants warranted that the Class Vehicles were defect-free and/or would meet a specified level of performance

over a specified period of time that formed the basis of a bargain between Defendants and Plaintiffs and the other Class members.

96.     Defendants provided Plaintiff and the other Class members with an implied warranty in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

97.     Defendants breached these warranties, as described in more detail above, and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they contain a defective seat belt system that could cause pieces of metal to be propelled across the cabin of the vehicle and cause serious injury and/or death to the vehicle's operators or passengers.

98.     Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.  Any limitations on the warranties are procedurally unconscionable.  There was unequal bargaining power between Defendants and Plaintiff and the other Class members. Any limitations on the warranties are substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks.  Defendants also knew

that their express warranties would not cover the Seat Belt Defect, and knowingly and intentionally transferred the costs of repair and/or replacement to Plaintiff and the Class members.

99.     Plaintiff and each of the other Class members have had sufficient direct dealings with either Defendants or their agents and/or dealerships to establish privity of contract.   Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers.   The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers.   Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Seat Belt Defect.

100.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here.   At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

101.    As a direct and proximate result of Defendants' breach of the written and implied warranties, Plaintiff and Class members sustained monetary damages and other losses in an amount to be determined at trial.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.   The amount in

controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.  Plaintiff, individually and on behalf of Class members, seek all damages permitted by law, including actual damages, consequential damages, statutory damages, specific performance, diminution in value of their vehicles, and any other relief as deemed appropriate in an amount to be proven at trial.  In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class members in connection with the commencement and prosecution of this action.

**NATIONWIDE COUNT III**
**Fraud by Concealment or Omission**
**(on Behalf of the Nationwide Class)**

102.   Plaintiff and the Class reallege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

103.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment.  Defendants are liable for both fraudulent concealment and non-disclosure.  *See, e.g.,* Restatement (Second) of Torts §§ 550–51 (1977).

104.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Seat Belt Defect with the intent to mislead Plaintiff and Class members.  Defendants knew, or should have known, that

that the Seat Belt Defect in the Class Vehicles could cause the seat belt pretensioners to explode, significantly increasing the risk of serious injury for drivers and occupants.

105.   A reasonable consumer would not have expected that the Class Vehicles contain the Seat Belt Defect.  Defendants knew that reasonable consumers expect that their vehicle have a fully functional seat belt system, and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

106.   Defendants ensured that Plaintiff and the Class did not discover this information through concealing it and misrepresenting the Class Vehicles' seat belt systems without disclosing the truth.  Defendants intended for Plaintiff and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

107.   Defendants had a duty to disclose the Seat Belt Defect because:

a.   Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety defect.  Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Class;

b.   Defendants knew the Seat Belt Defect (and its safety risks) was a material fact that would affect Plaintiff's or Class members' decisions to buy or lease Class Vehicles;

c.   Defendants are subject to statutory duties to disclose known safety defects to consumers and NHTSA; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their seat belt systems, while purposefully withholding material facts about a known safety defect.  In

uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Class that the Class Vehicles contained the dangerous Seat Belt Defect.  Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiff and the Class, Defendants had the duty to disclose the whole truth.  They did not.

108.    To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiff and the Class, and continue to conceal material information regarding the Seat Belt Defect.  The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiff and the Class.

109.    Defendants concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's image and cost money.  They did so at the expense of Plaintiff and the Class.  Had they been aware of the Seat Belt Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiff and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

110.    Accordingly, Defendants are liable to Plaintiff and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

111.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiff's and the Class's rights and well-

being; and to enrich themselves.  Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### NATIONWIDE COUNT IV
### Breach of the Duty of Good Faith and Fair Dealing
### (on Behalf of the Nationwide Class)

112.   Plaintiff and the Class reallege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

113.   All contracts contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

114.   A contractual relationship existed between Plaintiff and Class members and Defendants.  As alleged herein, Defendants were the designers, manufacturers, distributors, and warrantors of the Class Vehicles.  Defendants provided Plaintiffs with both express warranties as alleged herein as well as an implied warranty of merchantability in connection with the purchase or lease of the Class Vehicles. Defendants warranted that Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

115.   Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiff and Class members of the Seat Belt Defect in the Class Vehicles, and failing to repair this defect fully and properly, thereby depriving Plaintiff and Class members of the benefits under the contract.

116.   As a result of Defendants' breach of their duty of good faith and fair dealing, Plaintiffs were monetarily damaged, suffering out of pocket costs related to the Seat Belt Defect, loss of use, and diminution of value in the Class Vehicles. Had Plaintiffs and Class members known about the Seat Belt Defect, they would not have purchased or leased the Class Vehicles, or they would have paid less for them.

117.   Defendants acted in bad faith and with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

### NATIONWIDE COUNT V
### Unjust Enrichment
### (on Behalf of the Nationwide Class)

118.   Plaintiff and the Class reallege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

119.   Because of their conduct, Defendants caused damages to Plaintiff and Class members.

120.   Plaintiff and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Seat Belt Defect misrepresentations regarding the Class Vehicles' safety.

121.   As a result of Defendants' fraud and deception, Plaintiff and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

122.   Defendants knowingly benefitted from their unjust conduct.  They sold and leased Class Vehicles equipped with the Seat Belt Defect for more than what the vehicles were worth, at the expense of Plaintiff and Class members.

123.   Defendants readily accepted and retained these benefits from Plaintiff and Class members.

124.   It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Seat Belt Defect to consumers.  Defendants knowingly limited their warranty coverage and excluded the Seat Belt Defect.  Plaintiff and Class members would not have purchased or leased the Class Vehicles or paid less for them had Defendants not concealed the Seat Belt Defect.

125.   Plaintiff and Class members do not have an adequate remedy at law.

126.   Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiff and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

## STATE SPECIFIC CLAIMS

### A. Florida Counts

### FLORIDA COUNT I
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
*Fla. Stat. § 501.201, et seq.*
**(On Behalf of the Florida Sub-Class)**

127.    Plaintiffs, Kris Jarrell, Robert Bomer, and Kathleen Falvo (for purposes of this Count, "Plaintiffs") bring this claim individually and on behalf of the Florida Sub-Class against Defendants.

128.    Plaintiffs re-allege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

129.    Plaintiffs and the members of the Florida Sub-Class are "consumers" within the meaning of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. § 501.203(7).

130.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

131.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

132.    In the course of their businesses, Defendants failed to disclose and actively concealed the Seat Belt Defect contained in the Class Vehicles and the

corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

133.   In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Seat Belt Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and the members of the Florida Sub-Class.

134.   Defendants actively suppressed the fact that the Seat Belt Defect in Class Vehicles presents a safety hazard.  Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of the Seat Belt Defect within a reasonable time in violation of FDUTPA.  Defendants also breached warranties as alleged below in violation of FDUTPA.

135.   As alleged above, Defendants knew or should have known of the Seat Belt Defect contained in the Class Vehicles.  Prior to installing the seat belts in the Class Vehicles, Defendants engaged in preproduction testing and failure mode analysis.  Defendants should have known about the Seat Belt Defect after monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Seat Belt Defect.

136.     By failing to disclose and by actively concealing the Seat Belt Defect in the Class Vehicles, by marketing them as safe, reliable, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Seat Belt Defect to cause the seat belt pretensioners to explode and propel metal fragments across the vehicle, as well as the corresponding safety hazard to vehicle occupants.

137.     Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer.  Plaintiffs and the members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Seat Belt Defect, which were defective in design and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Seat Belt Defect and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiffs and the members of the Florida Sub-Class did.

138.     Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Seat Belt Defect with the intent to mislead Plaintiffs and members of the Florida Sub-Class.  Defendants knew, or should have known, that the seat belt systems were defective in design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement.  Defendants also knew, or

should have known, that the Seat Belt Defect in the Class Vehicles could cause the seat belt pretensioners to explode and propel metal fragments across the vehicle. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

139.  Defendants knew or should have known that their conduct violated the FDUTPA.

140.  Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles with the Seat Belt Defect that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Seat Belt Defect and its corresponding safety hazard.

141.  To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Seat Belt Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles with the Seat Belt Defect. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

142.  Defendants owed Plaintiffs and the members of the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Seat Belt Defect because Defendants:

> a.  Possessed exclusive knowledge of the Seat Belt Defect and its associated safety hazard;

b. Intentionally concealed the foregoing from Plaintiffs and the members of the Florida Sub-Class; and/or

c. Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the members of the Florida Sub-Class that contradicted these representations.

143. Because Defendants fraudulently concealed the Seat Belt Defect in the Class Vehicles, and now that the Seat Belt Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Plaintiffs and the members of the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

144. Defendants' failure to disclose and active concealment of the Seat Belt Defect in the Class Vehicles are material to Plaintiffs and the members of the Florida Sub-Class. A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports and remedies them.

145. Plaintiffs and the members of the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Plaintiffs and the members of the Florida Sub-Class been aware of the Seat Belt Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiffs and the members of the Florida Sub-Class either would not have paid as much for their

40

vehicles or would not have purchased or leased them at all. Plaintiffs and the members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

146. Plaintiffs and the members of the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiffs, the Florida Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

147. As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and the members of the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

148. Plaintiffs and the members of the Florida Sub-Class are entitled to recover their actual damages, under Fla. Stat. § 501.211(2), and attorneys' fees under Fla. Stat. § 501.2105(1).

149. Plaintiffs and the members of the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

## FLORIDA COUNT II
### Breach of Express Warranty
### *Fla. Stat. § 672.313*
### (On Behalf of the Florida Sub-Class)

150. Plaintiffs, Kris Jarrell, Robert Bomer, and Kathleen Falvo (for purposes of this Count, "Plaintiffs") bring this claim individually and on behalf of the Florida Sub-Class against Defendants.

151. Plaintiffs re-allege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

152. Defendants are and were at all relevant times with respect to motor vehicles were "merchants" and/or "sellers" as defined by Fla. Stat. § 672.104(1) and Fla. Stat. § 672.103(1)(d). Plaintiffs and the Class were "buyers" as defined by Fla. Stat. § 672.103(1)(a).

153. The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

154. Defendants provided Plaintiffs and the Class with one or more express warranties in connection with the purchase or lease of the Class Vehicles. Under the warranties provided to Plaintiffs and the Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendants breached these warranties.

155. Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and

promptly repair any defects.  These statements helped conceal the existence of the Seat Belt Defect and its corresponding safety risk from Plaintiffs and the Class.

156.   Plaintiffs and the Class have had sufficient dealings with Defendants or their agents and authorized dealerships to establish privity of contract between Defendants and Plaintiffs.  Nonetheless, privity is not required here because Plaintiffs and each member of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

157.   Defendants' affirmation of fact and promise in Defendants' marketing and signage became part of the basis of the bargain between Defendants and Plaintiffs and Class members, thereby creating express warranties that the services would conform to Defendants' affirmation of fact, representations, promise, and description.

158.   Defendants breached these warranties by selling and leasing Class Vehicles with the Seat Belt Defect, requiring repair or replacement.

159.   Because of the Seat Belt Defect, the Class Vehicles are not reliable, and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

160.   As a direct and proximate cause of Defendants' breach, Plaintiffs and Class members bought or leased Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Class

Vehicles suffered a diminution in value.  Plaintiffs and Class members also incurred and will continue to incur costs related to the diagnosis and repair of the Seat Belt Defect.

161.   Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers are unconscionable and unenforceable under the circumstances. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold a defective product without informing consumers about the Seat Belt Defect.

162.   The time limits in Defendants' warranties were also unconscionable and inadequate to protect Plaintiffs and Class members.  Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in formation and bargaining power existed between Defendants and Plaintiffs and Class members, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Seat Belt Defect posed a safety risk.

163.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Seat Belt Defect and have failed to provide a suitable repair or replacement free of charge within a reasonable time.

164.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

165.   Plaintiffs and Class members complied with all obligations under the warranties, or otherwise are excused from performance of such obligations because of Defendants' conduct alleged herein.

166.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

167.   Plaintiffs and members of the Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## FLORIDA COUNT III
### Breach of Implied Warranty of Merchantability
*Fla. Stat. § 672.314*
### (On Behalf of the Florida Sub-Class)

168.   Plaintiffs, Kris Jarrell, Robert Bomer, and Kathleen Falvo (for purposes of this Count, "Plaintiffs") bring this claim individually and on behalf of the Florida Sub-Class against Defendants.

169.   Plaintiffs re-allege and incorporate by reference paragraphs 1–83 as though fully set forth herein.

170.   Defendants are and were at all relevant times with respect to motor vehicles were "merchants" and/or "sellers" as defined by Fla. Stat. § 672.104(1) and Fla. Stat. § 672.103(1)(d).   Plaintiffs and the Class were "buyers" as defined by Fla. Stat. § 672.103(1)(a).

171.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

172.   Plaintiffs and the Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.

173.   At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

174.   The Class Vehicles with the Seat Belt Defect were not "merchantable" at the time of sale as they were not of "fair average quality within the[ir] description" or "fit for the ordinary purposes for which such goods are used" as is implied by law pursuant to Fla. Stat. § 672.314(2)(b) and (c).

175.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Seat Belt Defect —at the time of sale or lease and thereafter and present an undisclosed safety risk to drivers and occupants.

176.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.  Plaintiffs and the Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

177.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here.  At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

178.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Seat Belt Defect.   Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and the Class. Among other things, Plaintiffs and the Class did not determine these limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Defendants and the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Seat Belt Defect posed a safety risk.

179.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class have suffered economic loss in an amount to be proven at trial.

**B. California Counts**

<u>**CALIFORNIA COUNT I**</u><br>**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**<br>*Cal. Bus. & Prof. Code § 17200, et seq.*<br>**(On Behalf of the California Sub-Class)**

180.   Plaintiff, Timothy Cordial (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the California Sub-Class against Defendants.

181.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

182.    The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

183.    Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.  Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

    a.   by knowingly and intentionally concealing from Plaintiff and California Sub-Class members that the Class Vehicles suffer from the Seat Belt Defect while obtaining money from the California Sub-Class members;

    b.   by marketing Class Vehicles as possessing a functional, safe, and defect-free seat belt system;

    c.   by purposefully designing and manufacturing the Class Vehicles to contain the Seat Belt Defect that may cause the seat belt pretensioners to explode and propel metal fragments across the vehicle contrary to what was disclosed to regulators and represented to consumers who purchased the Class Vehicles, and failing to fix the Seat Belt Defect free of charge; and

    d.   by violating the other California laws alleged herein, including the False Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-Beverly Consumer Warranty Act.

184.    Defendants' misrepresentations, omissions, and concealment were material to the California Plaintiff and California Sub-Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

185.    Defendants' material misrepresentations and omissions alleged herein caused Plaintiff and the California Sub-Class members to make their purchases of their Class Vehicles.  Absent those misrepresentations and omissions, Plaintiff and

California Sub-Class members would not have purchased these vehicles, or would not have purchased these Class Vehicles at the prices they paid.

186.   Accordingly, Plaintiff and California Sub-Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

187.   Defendants' violations present a continuing risk to Plaintiff and California Sub-Class members, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

188.   Plaintiff requests that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the California Sub-Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

## CALIFORNIA COUNT II
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### *Cal. Bus. & Prof. Code § 17500, et seq.*
### (On Behalf of the California Sub-Class)

189.   Plaintiff, Timothy Cordial (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the California Sub-Class against Defendants.

190.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

191.    Defendants, Plaintiff, and California Sub-Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

192.    Defendants violated the False Advertising Law ("FAL") by causing to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements regarding the safety of the Class Vehicles that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including California Sub-Class members.  Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

193.    The misrepresentations and omissions regarding the reliability and safety of Class Vehicles as set forth herein were material and had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did, in fact, deceive reasonable consumers, including Plaintiff and California Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

194.    In purchasing or leasing their Class Vehicles, the California Sub-Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles.  Defendants' representations turned out not to be true because the Class Vehicles are distributed with a dangerous safety defect, rendering the seat belt system hazardous in the event of a crash.

195.   Plaintiff and the other California Sub-Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. Had they known the truth, Plaintiff and California Sub-Class members would not have purchased the Class Vehicles or paid significantly less for them.

196.   The California Plaintiff and California Sub-Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiff and California Sub-Class members did not, and could not, unravel Defendants' deception on their own.

197.   Defendants had an ongoing duty to Plaintiff and California Sub-Class members to refrain from unfair or deceptive practices under the California FAL in the course of their business. Specifically, the Defendants owed Plaintiff and California Sub-Class members a duty to disclose all the material facts concerning the Seat Belt Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Seat Belt Defect from Plaintiff and California Sub-Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

198.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

199.    Defendants' violations present a continuing risk to Plaintiff and California Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

200.    Plaintiff request that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to the California Sub-Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**CALIFORNIA COUNT III**
**BREACH OF EXPRESS WARRANTY**
*Cal. Com. Code §§ 2313 and 10210*
**(On Behalf of the California Sub-Class)**

201.    Plaintiff, Timothy Cordial (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the California Sub-Class against Defendants.

202.    Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

203.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

204.    All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

205.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

206.   Defendants provided Plaintiff and members of the California Sub-Class with one or more express warranties in connection with the purchase of Class Vehicles. As alleged herein, Defendants breached these warranties.

207.   Defendants also marketed the Class Vehicles as durable, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects.  Such representations formed the basis of the bargain in Plaintiff and members of the California Sub-Class's decisions to purchase the Class Vehicles.  These statements helped conceal the existence of the Seat Belt Defect and its corresponding safety risk from Plaintiff and members of the California Sub-Class.

208.   Plaintiff and members of the California Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the California Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers of the Class Vehicles only.

209.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the California Sub-Class purchased their Class Vehicles.  Given that the nature of the Seat Belt Defect is by design, the warranties are

substantively unconscionable because Defendants knew of the Seat Belt Defect and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Seat Belt Defect.

210.   Plaintiff and members of the California Sub-Class were induced to purchase the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the California Sub-Class that the Class Vehicles contained the Seat Belt Defect and failed to provide a suitable repair or replacement free of charge within a reasonable time.

211.   On information and belief, Defendants have not suitably repaired or replaced the Seat Belt Defect free of charge for Plaintiff and members of the California Sub-Class despite the existence of the Seat Belt Defect in the Class Vehicles at the time of sale.

212.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Seat Belt Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Seat Belt Defect manifests in the Class

Vehicles during their reasonably expected life), and absence of effective warranty competition.

213.   The time limits contained in Defendants' warranty periods were unconscionable and inadequate to protect Plaintiff and members of the California Sub-Class.  Among other things, Plaintiff and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Seat Belt Defect posed a safety risk. Defendants concealment of the Seat Belt Defect and failure to repair or replace the defective seat belt system is unconscionable.

214.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.  Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants

a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

215.   Because of the Seat Belt Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

216.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the California Sub-Class have been damaged in an amount to be determined at trial.

217.   In the alternative, should Defendants claim that the Seat Belt Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the California Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

218.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the California Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the California Sub-Class of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

## CALIFORNIA COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### *Cal. Com. Code §§ 2314 and 10212*
### (On Behalf of the California Sub-Class)

219.   Plaintiff, Timothy Cordial (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the California Sub-Class against Defendants.

220.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

221.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

222.   All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

223.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

224.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

225.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

226.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the

trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Seat Belt Defect, which may cause the seat belt pretensioners to explode and propel metal fragments across the vehicle, rendering the Class Vehicles inherently defective and dangerous.

227.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold a defective product without informing consumers about the Seat Belt Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the California Sub-Class.  Among other things, Plaintiff and members of the California Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the California Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Seat Belt Defect posed a safety risk.

228.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any

informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

229.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and California Sub-Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT V**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT,**
**BREACH OF IMPLIED WARRANTY**
*Cal. Civ. Code § 1790, et seq.*
**(On Behalf of the California Sub-Class)**

230.   Plaintiff, Timothy Cordial (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the California Sub-Class against Defendants.

231.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

232.   All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

233.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

234.   Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

235.   Defendants impliedly warranted to Plaintiff and the other members of the California Sub-Class that the Class Vehicles were "merchantable" within the

meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

236.   The Class Vehicles would not pass without objection in the automotive trade due to the Seat Belt Defect.  Because the Class Vehicles contain the Seat Belt Defect, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

237.   The Class Vehicles are not adequately labeled because the labeling fails to disclose the Seat Belt Defect. The Class Vehicles do not conform to the promises and affirmations made by the Defendants regarding safety.

238.   The Defendants' breach of the implied warranty of merchantability caused damage to Plaintiff and California Sub-Class members who purchased the defective Class Vehicles.  The amount of damages due will be proven at trial.

239.   Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and California Sub-Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

## C. New York Counts

**NEW YORK COUNT I**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW**
***N.Y. Gen. Bus. Law § 349***
**(On Behalf of the New York Sub-Class)**

240.   Plaintiff, Anthony Joseph (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the New York Sub-Class against Defendants.

241.    Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

242.    Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles for personal or household use.

243.    Plaintiff and members of the New York Sub-Class are permitted to bring this action for injunctive relief and actual damages under the New York General Business Law ("NYGBL").  *See* N.Y. Gen. Bus. Law § 349(h).

244.    Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYGBL. See N.Y. Gen. Bus. Law § 349(a).

245.    The NYGBL prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." See N.Y. Gen. Bus. Law § 349(a).

246.    Defendants violated the NYGBL by engaging in deceptive acts or practices directed to consumers in connection with the sale and/or lease of Class Vehicles.

247.    Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Seat Belt Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the New York Sub-Class. Plaintiff and members of the New York Sub-Class could not reasonably have known about the Seat Belt Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

62

248.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Seat Belt Defect with the intent to mislead Plaintiff and members of the New York Sub-Class. Defendants knew, or should have known, that the Seat Belt Defect was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Seat Belt Defect in the Class Vehicles could cause the seat belt pretensioners to explode and propel metal fragments across the vehicle.  Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

249.    Defendants owed a duty to disclose the Seat Belt Defect and its corresponding safety risk to Plaintiff and members of the New York Sub-Class because they possessed superior and exclusive knowledge regarding the Seat Belt Defect and the risks associated with the manifestation of Seat Belt Defect.  Rather than disclose the Seat Belt Defect, Defendants engaged in deceptive acts or practices in order to sell additional Class Vehicles and wrongfully transferred the cost of repair or replacement of the Seat Belt Defect to Plaintiff and members of the New York Sub-Class.

250.    Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Seat Belt Defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiff and members of the New York Sub-Class.

251.    At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Seat Belt Defect and its corresponding safety risk were material to Plaintiff and members of the New York Sub-Class.  When Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' seat belt systems were free from defects or alternatively, would be covered under Defendants' express warranties.  Had Defendants disclosed that the Seat Belt Defect may fail and/or create an unavoidable safety risk, Plaintiff and members of the New York Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

252.    Defendants had a continuous duty to Plaintiff and members of the New York Sub-Class to refrain from unfair and deceptive practices under the NYGBL and to disclose the Seat Belt Defect. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Seat Belt Defect and corresponding safety risk are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment, suppression and/or omission of the Seat Belt Defect in violation of the NYGBL, Plaintiff and members of the New York Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Seat Belt Defect and/or actual damages in the amount of the cost to replace the Seat Belt Defect and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of

the diminished value of their vehicles as a result of Defendants' deceptive acts or practices in the course of their business.

253.   Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

254.   Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Seat Belt Defect and corresponding safety risk.

255.   Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiff and members of the New York Sub-Class as well as the public.

256.   As a direct and proximate result of Defendants' violations of the NYGBL, Plaintiff and members of the New York Sub-Class have suffered actual damages and/or injury in fact.

257.   As a result of Defendants' unlawful conduct, Plaintiff and members of the New York Sub-Class are entitled to actual damages, treble damages, costs of litigation, attorneys' fees, injunctive and other equitable relief. See N.Y. GEN. BUS. LAW § 349(h).

**NEW YORK COUNT II**
**BREACH OF EXPRESS WARRANTY**
*N.Y. U.C.C. Law §§ 2-313, 2A-103, and 2A-210*
**(On Behalf of the New York Sub-Class)**

258.   Plaintiff, Anthony Joseph (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the New York Sub-Class against Defendants.

259.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

260.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. Law § 2-104(1), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

261.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. Law §§ 2-105(1) and 2A-103(1)(h).

262.   Defendants provided Plaintiff and members of the New York Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. Under the warranties provided to Plaintiff and the New York Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendants breached these warranties.

263.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the seat belt pretensioners at any time during the useful life of the Class Vehicle.

Such representations formed the basis of the bargain in Plaintiff and members of the New York Sub-Class's decisions to purchase or lease the Class Vehicles.

264.   Defendants also marketed the Class Vehicles as durable, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects.  These statements helped conceal the existence of the Seat Belt Defect and its corresponding safety risk from Plaintiff and members of the New York Sub-Class.

265.   Plaintiff and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the New York Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

266.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Seat Belt Defect is by design, the warranties are substantively unconscionable because Defendants knew of the Seat Belt

Defect and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Seat Belt Defect.

267.   Plaintiff and members of the New York Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the New York Sub-Class that the Class Vehicles contained the Seat Belt Defect and failed to provide a suitable repair or replacement of the Seat Belt Defect free of charge within a reasonable time.

268.   On information and belief, Defendants have not suitably repaired or replaced the Seat Belt Defect free of charge for Plaintiff and members of the New York Sub-Class despite the existence of the Seat Belt Defect in the Class Vehicles at the time of sale or lease.

269.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Seat Belt Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Seat Belt Defect manifests in the Class

Vehicles during their reasonably expected life), and absence of effective warranty competition.

270.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class.  Among other things, Plaintiff and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Seat Belt Defect posed a safety risk.

271.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Seat Belt Defect and have failed to provide a suitable repair or replacement of the seat belt system free of charge within a reasonable time.

272.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here.  At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose

the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

273.    Because of the Seat Belt Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

274.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be determined at trial.

275.    In the alternative, should Defendants claim that the Seat Belt Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the New York Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

276.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the New York Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the New York Sub-Class of the purchase or lease price of all

Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

<strong><u>NEW YORK COUNT III</u></strong><br><strong>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</strong><br><strong><em>N.Y. U.C.C. Law §§ 2-314, 2A-103, and 2A-212</em></strong><br><strong>(On Behalf of the New York Sub-Class)</strong>

277.    Plaintiff, Anthony Joseph (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the New York Sub-Class against Defendants.

278.    Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

279.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. Law § 2-104(1), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

280.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. Law §§ 2-105(1) and 2A-103(1)(h).

281.    Plaintiff and members of the New York Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

282.    A warranty that the Class Vehicles with the Seat Belt Defect were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.Y. U.C.C. Law §§ 2-314 and 2A-212.

283.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Seat Belt Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

284.    Plaintiff and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the New York Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

285.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class.  Among other things, Plaintiff and members of the New York Sub-Class did not

determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the Seat Belt Defect posed a safety risk.

286.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Seat Belt Defect and have failed to provide a suitable repair or replacement of the seat belt system free of charge within a reasonable time.

287.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

288.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be proven at trial.

289.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Seat Belt Defect.   Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class.   Among other things, Plaintiff and members of the New York Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the New York Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Seat Belt Defect posed a safety risk.

290.   Plaintiff and members of the New York Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

291.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## D. Illinois Counts

**ILLINOIS COUNT I**
**VIOLATION OF ILLINOIS CONSUMER FRAUD**
**AND DECEPTIVE BUSINESS PRACTICES ACT**
*815 ILCS 505/1, et seq. and 720 ILCS 295/1A*
**(On Behalf of the Illinois Sub-Class)**

292.    Plaintiff, Nathaniel Segura (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the Illinois Sub-Class against Defendants.

293.    Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

294.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

295.    Members of the Illinois Sub-Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

296.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

297.    In the course of their business, Defendants violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

298.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Seat Belt Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by 815 ILCS 505/2.

299.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Illinois Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

300.    Defendants' scheme and concealment of the Seat Belt Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Illinois Sub-Class members, as the Defendants intended. Had they known the truth, Plaintiff and Illinois Sub-Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

301.    Plaintiff and Illinois Sub-Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose.  Plaintiff and Illinois Sub-Class members did not, and could not, unravel Defendants' deception on their own.

302.   Defendants had an ongoing duty to Plaintiff and Illinois Sub-Class members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business.  Specifically, Defendants owed Plaintiff and Illinois Sub-Class members a duty to disclose all the material facts concerning the Seat Belt Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Illinois Sub-Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

303.   Defendants' violations present a continuing risk to Plaintiff and Illinois Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

304.   Plaintiff and the Illinois Sub-Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the Illinois CFA.  All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

305.   As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff and members of the Illinois Sub-Class have suffered injury-in-fact and/or actual damage.

306.   Pursuant to 815 ILCS 505/10a(a), the Illinois Sub-Class seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

307.   Plaintiff and the Illinois Sub-Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

### ILLINOIS COUNT II
### BREAK OF EXPRESS WARRANTY
*810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210*
**(On Behalf of the Illinois Sub-Class)**

308.   Plaintiff, Nathaniel Segura (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the Illinois Sub-Class against Defendants.

309.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

310.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

311.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

312.   In connection with the purchase of Class Vehicles, the Defendants provided Plaintiff and Illinois Sub-Class members with written express warranties

covering the repair or replacement of components that are defective in materials or workmanship.

313.   Defendants' warranties formed the basis of the bargain that was reached when Plaintiff and Illinois Sub-Class members unknowingly purchased Class Vehicles that came equipped with the Seat Belt Defect.

314.   However, Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants were aware of the Seat Belt Defect in the Class Vehicles, which made the vehicles inherently defective and dangerous at the time that they were sold to Plaintiff and Illinois Sub-Class members.

315.   Plaintiff and Illinois Sub-Class members reasonably relied on the Defendants' express warranties when purchasing or leasing their Class Vehicles.

316.   Defendants knowingly breached their express warranties to repair defects in materials and workmanship by failing to repair the Seat Belt Defect in the Class Vehicles.  Defendants also breached their express warranties by providing a product containing defects that were never disclosed to Plaintiff and Illinois Sub-Class members.

317.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.  Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles'

inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied. Plaintiff and the Illinois Sub-Class seek all damages and relief to which it is entitled.

318.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiff and Illinois Sub-Class members have been damaged in an amount to be proven at trial.

## ILLINOIS COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### *810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212*
### (On Behalf of the Illinois Sub-Class)

319.   Plaintiff, Nathaniel Segura (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the Illinois Sub-Class against Defendants.

320.   Plaintiff re-alleges and incorporates by reference paragraphs 1–83 as though fully set forth herein.

321.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

322.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

323.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

324.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Seat Belt Defect, which may cause the seat belt pretensioners to explode and propel metal fragments across the vehicle, rendering the Class Vehicles inherently defective and dangerous.

325.   Defendants were provided notice of the Seat Belt Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

326.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Illinois Sub-Class members have been damaged in an amount to be proven at trial.

## REQUEST FOR RELIEF

327.   WHEREFORE, Plaintiff, Individually and on behalf of Class members, respectfully request the Court enter judgment in their favor and against Defendants as follows:

a.   Certification of the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure, including appointment of Plaintiffs as class representatives and appointment of Plaintiffs' counsel as Class Counsel;

b.   Damages, including actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

c.   And order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d.   An award of reasonable costs and attorney fees; and

e.   Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

328.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury for all claims so triable.

Dated: August 19, 2022

Respectfully submitted,

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman
Scott P. Schlesinger
Jonathan R. Gdanski
Sarah J. Schultz

**SCHLESINGER LAW OFFICES, P.A.**
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
scott@schlesingerlaw.com
jonathan@schlesingerlawoffices.com
jhaberman@schlesingerlaw.com
sarah@schlesingerlaw.com

*Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: <u>*/s/ Jeffrey L. Haberman*</u>
     Jeffrey L. Haberman