## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

KRIS JARRELL, ROBERT BOMER,
KATHLEEN FALVO, ANTHONY JOSEPH,
and NATHANIEL SEGURA, individually
and on behalf of those similarly situated,

      Plaintiffs,

                                 Case No.: 6:22-cv-00990-CEM-EJK

      v.

HYUNDAI MOTOR AMERICA,
HYUNDAI MOTOR COMPANY, and
HYUNDAI MOTOR MANUFACTURING
ALABAMA, LLC,

      Defendants.

_____/

## PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs—Kris Jarrell, Robert Bomer, Kathleen Falvo, Anthony Joseph, and Nathaniel Segura—individually and on behalf of all those similarly situated ("the Class"), by and through undersigned counsel, file this First Amended Complaint, and allege against Defendants—Hyundai Motor America, Hyundai Motor Company, and Hyundai Motor Manufacturing Alabama, LLC ("Defendants" or "Hyundai")—as follows:

### NATURE OF THE ACTION

1.    When properly functioning, seat belts are designed to prevent or lessen the risk of injury to the occupants of a vehicle in the event of crash. Unfortunately, for

consumers of over two hundred thousand Hyundai vehicles, their seat belt components could seriously harm passengers during a crash instead of saving them.

2.     On May 19, 2022, Hyundai issued a safety recall for approximately 239,000 Hyundai vehicles in the United States equipped with seat belt pretensioners that could explode, projecting metal fragments through the vehicle which could strike and injure the vehicle's occupants.  The cause of these exploding seat belt pretensioners remains unknown.[1]

3.     Significantly, Defendants have had actual knowledge of the defect in the seat belt pretensioners (hereinafter "Seat Belt Defect") since at least September 2021, when the National Highway Traffic Safety Administration ("NHTSA") informed Hyundai of a crash incident involving a 2021 Hyundai Elantra—a vehicle now part of the safety recall—where the driver-side seat belt pretensioner deployed abnormally, propelling metal fragments through the cabin of the Elantra and injuring a passenger's leg.  Following this incident, in September 2021, the NHTSA instructed Hyundai to assess the incident.[2]

4.     In December 2021, Hyundai identified a second incident involving a 2020 Hyundai Accent in Puerto Rico in which a passenger was injured by the Seat Belt Defect.[3]  Similarly, in February 2022, Hyundai identified yet another incident

---

[1] LaChance, D., *Hyundai Recalls 239,000 Vehicles Over Exploding Seat Belt Pretensioners*, RDN (May 30, 2022), https://www.repairerdrivennews.com/2022/05/30/hyundai-recalls-239000-vehicles-over-exploding-seat-belt-pretensioners/.

[2] Shepardson, D., *Hyundai to Recall 281,000 North American Vehicles Over Exploding Part*, REUTERS (May 24, 2022), https://www.reuters.com/business/autos-transportation/hyundai-recall-239000-us-vehicles-over-exploding-part-2022-05-24/.

[3] *Id.*

involving a 2022 Hyundai Elantra in Singapore where the front left-side seat belt pretensioner exploded causing injuries to one of the vehicle's rear passengers.[4]

5.     Defendants knew or should have known of the Seat Belt Defect much earlier due to pre-production testing, failure mode analysis, and reports to authorized dealers, repair centers, and complaints to the NHTSA.

6.     Despite having knowledge of the exploding seat belt pretensioners, Hyundai concealed this information, delayed issuing a recall, and still to this day has not sent notification letters to owners of the defective vehicles.

7.     Because of Hyundai's unfair, misleading, deceptive, and/or fraudulent business practices in failing to disclose the Seat Belt Defect to Plaintiffs and putative Class members, owners and lessees of the recalled Hyundai vehicles have suffered losses in money and property.  Had Plaintiffs and the putative Class members known of the safety defect in the seat belts, they would not have purchased or leased those vehicles, or would have paid substantially less for them.  In addition, seat belt failure requires expensive repairs and other miscellaneous costs.  As a direct result of the Seat Belt Defect and Hyundai's concealment, owners of the recalled Hyundai vehicles have a lower market value and are inherently worth less than they otherwise would be.

8.     Plaintiffs therefore bring this class action on behalf of themselves, and all persons similarly situated who have purchased or leased the following Hyundai vehicles: Model Year 2019–2022 Hyundai Accents, Model Year 2021–2023 Hyundai

---

[4] *Id.*

Elantras, and 2021–2022 Hyundai Elantra Hybrids (hereinafter referred to as the "Class Vehicles") to redress Defendants' misconduct.

## PARTIES, JURISDICTION, AND VENUE

### A. **Plaintiffs**

9.      Plaintiff, Kris Jarrell, is a resident and citizen of Volusia County, Florida. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #KMHLM4AG3MU162767)— which has the Seat Belt Defect.  Through Ms. Jarrell's exposure to Hyundai, she was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which she relied, and which was a primary reason she purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Ms. Jarrell.  Ms. Jarrell would not have purchased the vehicle, or would have paid less for it, had she known about the Seat Belt Defect.

10.      Plaintiff, Robert Bomer, is a resident and citizen of Broward County, Florida. Mr. Bomer is the owner of a 2021 Hyundai Elantra (VIN #5NPL4AG1MH029639)—which has the Seat Belt Defect.  Through Mr. Bomer's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which he relied, and which was a primary reason he purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Mr. Bomer.  Mr. Bomer would not

have purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

11.     Plaintiff, Kathleen Falvo, is a resident and citizen of Hillsborough County, Florida. Ms. Falvo is the owner of a 2022 Hyundai Elantra (VIN #KMHLN4AG6NU341724)—which has the Seat Belt Defect.  Through Ms. Falvo's exposure to Hyundai, she was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which she relied, and which was a primary reason she purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Ms. Falvo.  Ms. Falvo would not have purchased the vehicle, or would have paid less for it, had she known about the Seat Belt Defect.

12.     Plaintiff, Anthony Joseph, is a resident and citizen of Suffolk County, New York. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #KMHLN4AJ8MU006183)—which has the Seat Belt Defect.  Through Plaintiff's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

13.     Plaintiff, Nathaniel Segura, is a resident and citizen of Cook County, Illinois. Plaintiff is the owner of a 2021 Hyundai Elantra (VIN #5NPLP4AG7MH021688)—which has the Seat Belt Defect.  Through Plaintiff's exposure to Hyundai, he was aware of Hyundai's uniform and pervasive marketing messages of dependability, and safety, upon which Plaintiff relied, and which was a primary reason he purchased a Hyundai Elantra.  Despite touting the dependability and safety of Hyundai vehicles, at no point did Hyundai or their agents, dealers, or other representatives disclose the Seat Belt Defect to Plaintiff.  Plaintiff would not have purchased the vehicle, or would have paid less for it, had he known about the Seat Belt Defect.

**B. <u>Defendants</u>**

14.     Defendant Hyundai Motor America ("HMA") is a California corporation with its headquarters and principal place of business at 10550 Talbert Avenue, Fountain Valley, CA 92708. HMA is the United States sales, marketing, and distribution subsidiary of its Korean parent company, Hyundai Motor Company. HMA is responsible for manufacturing, assembling, importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Hyundai vehicles in the United States.

15.     Defendant Hyundai Motor Company ("HMC") is a corporation organized and existing under the laws of the Republic of Korea and has its principal place of business in Seoul, South Korea.  HMC is the parent corporation of HMA and advertises all Hyundai models sold by HMA.

16.     Defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA") is a Delaware limited liability company headquartered in Montgomery Alabama with its principal place of business at 700 Hyundai Blvd., Montgomery, AL 36105.  HMMA is a subsidiary of HMC and is responsible for the manufacturing and assembly of certain Hyundai vehicles, including Hyundai Elantras.

### C. Jurisdiction and Venue

17.     Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which there are more than 100 members of the Class.  Members of the Class are citizens of states different from Defendants, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen.

18.     This Court has personal jurisdiction over Defendants because they intentionally avail themselves of the rights and privileges of conducting business in the State of Florida where members of the Class reside, and they have continuous and systematic contacts with Florida and those other states, owing to Defendants' advertising and sales targeting citizens in all fifty states, the District of Columbia, and U.S. territories.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as substantial acts in furtherance of the alleged improper conduct giving rise to the claims herein occurred within the Middle District of Florida.  Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through

numerous Hyundai dealers doing business in this District.  Defendants' actions have caused harm to hundreds of members of the Class residing in Florida, including Plaintiffs.

## GENERAL FACTUAL ALLEGATIONS

20.    Hyundai sells millions of cars throughout the United States.  In 2021 alone, Hyundai sold more than 700,000 vehicles in the United States.[5]

21.    Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

### A. Hyundai Marketed the Class Vehicles as Dependable and Safe.

22.    Hyundai marketed, distributed, and warranted the Class Vehicles in the United States in a uniform manner.

23.    For decades, Hyundai has touted the superior safety of its vehicles.  For example, since 1999, Hyundai has encouraged its consumers to "buy a Hyundai and add ten years to your life."

---

[5] *Hyundai Motor America Reports December Q4 and 2021 Sales*, HYUNDAI MEDIA CENTER (Jan. 4, 2022), https://www.hyundainews.com/en-us/releases/3475#:~:text=2021%20Results,best%20year%20in%20company%20history.



24.     In its more recent marketing, Hyundai uses tag lines such as "America's Best Warranty," "the Hyundai Assurance," "five-star rating," "advanced safety," "2022 top safety pick," "safety rating that are untouched and elite," and encourages consumers to buy "a car that has the best safety ratings" on the market (i.e., a Hyundai).



> **Buy a car that has the best safety ratings.**
>
> Hyundai is proud to be awarded national safety ratings that are untouched and elite.  Ask yourself, if at the point of a family death, you'd consider the cost worth the loss. I think for all of us the answer is no - but so many families don't plan ahead or consider that in the top 10 causes for death in America is unintentional injuries.  Make that sacrifice for safety today.

25.     Hyundai tells its customers to ask themselves "if at the point of a family death, you'd consider the cost worth the loss" and encourages them to "[m]ake th[e] sacrifice for safety today" and buy a Hyundai.  Ironically, it is Hyundai who failed to sacrificed safety for profits and market ratings.

26.     In addition to its "untouched and elite" safety, Hyundai further boasts that its vehicles make driving "easier" with "[c]onvenience that helps make commutes and long drives more bearable."  The Seat Belt Defect does just the opposite—making the thought of driving on long drives or commutes worrisome and unbearable.

> ## Making your drive easier.
>
> Convenience that helps make commutes and long drives more bearable by safely taking over the tedious parts of driving when you want them to.

27.     Plaintiffs and the Class cannot now receive the benefit of the bargain. Hyundai Class Vehicles do not make driving easier or convenient and they certainly have not lived up to their promise of being the best in safety, among other false promises.  Rather than "add[ing] ten years to [their] life," Plaintiffs and the Class are at an increased risk for crashes, severe injury, and death.

28.     Defendants' brochures for Class Vehicles make similar claims regarding, safety, reliability, durability, and performance of their vehicles.

29.     Hyundai developed, created, and controlled all the advertising, marketing, and point-of-sale materials for their respective Class Vehicles.

30.     In contrast to Hyundai's marketing campaign, the Class Vehicles are equipped with seat belts that may explode and result in metal shards flying through the vehicle's cabin, creating an inherently dangerous safety risk with potentially disastrous consequences for Plaintiff and members of the Class.

31.     Defendants knew or should have known of the Seat Belt Defect but failed to rectify it.

**B. <u>The Seat Belt Pretensioner Defect</u>.**

32.     Seat belts, and particularly seat belt pretensioners, may be the most significant component of any vehicle in terms of safety.

33.     The Class Vehicles—like all other cars—are equipped with seat belts. The typical three-point seat belt is comprised of a latch, a latch plate, a height adjuster, an extender, and a pretensioner.

34.     The pretensioner is the part of the system that draws back the seat belt to keep it firm while driving and is responsible for locking the belt during a collision to keep the driver or passenger in position.

35.     To do this, the pretensioner utilizes an explosive charge to initiate a concealed piston once the sensors detect that an accident has occurred.  The piston

proceeds to drive the spool of seat belt fabric rapidly around, thereby removing any slack from the seat belt.

36.     On May 19, 2022, the NHTSA issued a Part 573 Safety Recall Report ("Recall Report") documenting the recalled vehicles models, the number of potentially involved vehicles, a description of the defect and safety risk, a description of the cause of defect, a description of the remedy offered by Hyundai, and a recall schedule.[6]

37.     According to the NHTSA's Recall Report, the total number of Hyundai vehicles potentially involved in the United States is 239,000.[7]  It is also estimated that an additional 41,000 Hyundai containing the same Seat Belt Defect have been purchased or leased in Canada.[8]

38.     The Recall Report states that Defendant HMA determined that "[t]he subject vehicles are equipped with driver/passenger pyrotechnic-type seat belt pretensioners that may deploy abnormally during a crash" and that "[a] specific root cause has not yet been determined."[9]

39.     According to the Recall Report, the safety risk created by the Seat Belt Defect is as follows: "An abnormal pyrotechnic pretensioner deployment **could cause metal fragments to enter the vehicle occupant compartment, which may result in injury to vehicle occupants**."[10]

---

[6]    *See Part 573 Safety Recall Report 22V-354*, NHTSA (May 19, 2022), https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V354-9112.PDF.
[7] *Id.*
[8] *See supra* note 2.
[9] *See supra* note 7.
[10] *Id.* (emphasis added).

40. As a remedy, the Recall Report indicates that:

All owners of the subject vehicles will be notified by first class mail with instructions to bring their vehicles to a Hyundai dealer to have the seat belt pretensioner's micro gas generator and delivery pipe secured with a cap to prevent potential abnormal deployment. This remedy will be offered at no cost to owners for all affected vehicles, regardless of whether the affected vehicles are still covered under Hyundai's New Vehicle Limited Warranty. Additionally, Hyundai will provide owners of affected vehicles reimbursement for out-of-pocket expenses incurred to obtain a remedy for the recall condition in accordance with the reimbursement plan submitted to NHTSA on February 24, 2022.[11]

41. Nevertheless, HMA does not plan to provide notice to Class Vehicle owners until July 15, 2022.[12]

C. **Despite Having Knowledge of the Seat Belt Defect, Defendants Continued to Market the Class Vehicles as Safe and Reliable.**

42. On September 15, 2021, NHTSA's Office of Defects Investigation informed Defendant HMA of a crash incident involving a 2021 Hyundai Elantra in which "the driver-side seat belt pretensioner allegedly deployed abnormally causing metal fragments to enter the rear cabin and result[ed] in injury to an occupant's leg."[13]

43. Following this notice, the Office of Defects Investigation requested Hyundai's assessment of the incident. *Id.*

44. On September 30, 2021, Defendant HMA provided an update on its investigation of the 2021 Elantra incident. *Id.* HMA stated it had plans to inspect the subject Elantra on October 8, 2021 and that it would be "targeting seat belt

---

[11] *Id.*

[12] *Id.*

[13] *Recall 229 Attachment A—Chronology of Events Leading up to Defect Decision*, NHTSA (May 19, 2022), https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V354-7726.pdf.

pretensioners produced in the same production lot as the incident pretensioner for further study into root cause and manufacturing/design defect identification." *Id.*

45.     On October 6, 2021, HMA's North American Safety Decision Authority ("NASDA") convened and determined that while the cause of the abnormal deployment was unknown, HMA would "conduct a safety recall of vehicles equipped with pretensioners produced within the same production lot to conduct a detailed part return analysis." *Id.*

46.     On December 3, 2021, Defendant HMC was notified of a second incident involving a 2020 Hyundai Accent in which a seat belt pretensioner that was "produced thirteen months prior to the suspect production lot" identified in the initial recall (Recall 211). *Id.*

47.     On December 10, 2021, HMA re-convened and decided to expand Recall 211 to include 2021–2021 Hyundai Accent vehicles equipped with pretensioners from the earlier suspect production lot. *Id.*

48.     On February 15, 2022, HMC notified HMA of a new incident involving a 2022 Hyundai Elantra in which the "front left-side seat belt pretensioner deployed abnormally causing injuries to a rear passenger." *Id.* The pretensioner in this vehicle was from a different production lot than the prior incidents and lots targeted in Recalls 211 and 219. *Id.*

49.     On February 24, 2022, HMA re-convened for a third time and decided to conduct another recall for the 2022 Hyundai Elantras with the new suspect production lot. *Id.*

50.     On March 25, 2022, HMA again re-convened its NASDA to proactively increase the number of recovered pretensioners for analysis and identify the root cause. *Id.*

51.     NASDA decided to conduct a new recall of Hyundai Accent and Elantra vehicles containing seat belt pretensioners from certain targeted pretensioner lots produced within approximately one (1) month before/after the identified suspect production lots associated with Recalls 211, 219, and 220.  *Id.*

52.     On March 28, 2022, investigative teams from NASO, HMC, and one of their suppliers inspected the incident 2021 Hyundai vehicle and found the crash pulse and duration data retrieved from the EDR compared similarly to the incident 2022 Hyundai Elantra vehicle's crash data.  Based on this information, HMC determined that the pretensioners used in the subject Elantra and Accent vehicles could exhibit unique deployment characteristics when compared to other models using the same pretensioners.  *Id.*

53.     In April 2022, Hyundai retained Exponent—a third-party engineering firm—to conduct metallurgical analyses on the connection between the micro gas generator and pretensioner used in the subject Hyundai Elantra and Accent vehicles and identify potential areas of stress and fracture initiation sites during deployment. *Id.*

54.     On April 20, 2022, HMA provided an update of Hyundai's investigation as described above to NHTSA's Office of Defects Investigation.  *Id.*

55.     On April 25, 2022, HMC obtained testing by design affiliates and the supplier that were successful in replicating the abnormal deployment condition in the subject Elantra and Accent vehicles.  HMC also informed of a potential remedy which would secure the micro gas generator connection with a cap and eliminate stress sites that could potentially increase the risk of an abnormal deployment.  In subsequent testing, Exponent was able confirm the effectiveness of the cap in mitigating this risk. *Id.*

56.     On May 11, 2022, HMA re-convened its NASDA and decided to conduct a recall of all Elantra and Accent vehicles equipped with the subject pretensioner, including those already involved in Recalls 211, 219, 220, and 223, to receive the remedy cap.  *Id.*

57.     This Recall is untimely and ineffective at remedying the significant losses, which Plaintiffs and the Class have suffered.  Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs.  They did so at the expense of Plaintiffs and the Class.

58.     Defendants failed to inform Class Vehicle owners and lessees at the point of sale and before purchase or lease of the Class Vehicles of the Seat Belt Defect. Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Seat Belt Defect in the Class Vehicles.

59.     Defendants had actual knowledge that Class Vehicles were experiencing seat belt pretensioner explosions due to the Seat Belt Defect.  Despite this knowledge,

Defendants continued to sell Class Vehicles with the Seat Belt Defect and allowed the Class Vehicles to be driven on the road endangering Plaintiffs and members of the Class.

60.     Plaintiffs and Class members did not possess sufficient technical expertise to recognize symptoms of the Seat Belt Defect.  This information, however, was well known to Defendants, but not revealed.

61.     Reasonable consumers, including Plaintiffs and members of the Class, would find disclosure of the Seat Belt Defect to be material.

62.     Defendants concealed the Seat Belt Defect from Plaintiffs and all Class Vehicle purchasers and lessees.  Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a Seat Belt Defect that would cause flying metal shrapnel.

63.     Defendants engaged in unconscionable fraudulent commercial practices, attempting to conceal the Seat Belt Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

64.     Defendants fraudulently omitted to disclose material facts basic to the purchase concerning Class Vehicles, including information related to the Seat Belt Defect, to deceive purchasers and lessees as described herein.  At the time of purchase or lease, Defendants fraudulently omitted to disclose material matters regarding the Seat Belt Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability.  Defendants fraudulently concealed from Plaintiff and members of the Class concerning the Seat Belt Defect in Class Vehicles even though Defendants

17

knew or should have known that information concerning the Seat Belt Defect was material and central to the marketing, sale, and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiffs and members of the Class.

65.     If Plaintiffs and members of the Class had been informed of the Seat Belt Defect in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or paid substantially less.  If Plaintiffs and members of the Class had learned of the Seat Belt Defect in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without a major defect and were not fully informed of true characteristics and attributes of Class Vehicles.  Defendants' conduct that violated the consumer fraud statutes alleged below deprived Plaintiffs and members of the Class of that remedy.

66.     As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Class purchased or leased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

## CLASS ACTION ALLEGATIONS

### A. Class Definitions

67.     The proposed Florida Class includes all persons and entities that purchased or leased a Class Vehicle in the State of Florida. The proposed New York Class includes all persons and entities that purchased or leased a Class Vehicle in the

State of New York. The proposed Illinois Class includes all persons and entities that purchased or leased a Class Vehicle in the State of Illinois.

68.     The Class Vehicles include: Model Year 2019–2022 Hyundai Accents, Model Year 2021–2023 Hyundai Elantras, and 2021–2022 Hyundai Elantra Hybrids.[14]

69.     Excluded from the Classes are: Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and Judicial officers and their immediate family members and associated court staff assigned to this case.

70.     The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

71.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

72.     Plaintiffs reserve the right to revise the Class definitions based on information learned through discovery and further investigation.

---

[14] Plaintiffs reserve the right to supplement or amend the Class Vehicles after conducting discovery and further investigation.

**B. Class Action Requirements**

73.   <u>Numerosity</u>:  Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.   Plaintiffs are informed and believe, based on information available regarding the nationwide sales and recalls of certain Class Vehicles, there are hundreds (if not thousands) of Class members.  The precise number of Class members is unknown to Plaintiffs but may be ascertained from the Defendants' records and vehicle registration records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and published notice.

74.   <u>Commonality and Predominance</u>:   Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including, without limitation:

   a.   Whether Defendants engaged in the conduct alleged herein;

   b.   Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

   c.   Whether the Class Vehicles have and were sold with the Seat Belt Defect;

   d.   Whether a reasonable consumer would consider the Seat Belt Defect and its consequences to be material to the decision to purchase or lease a Class Vehicle;

   e.   Whether the Seat Belt Defect constitutes a safety defect;

f.    Whether Defendants knew of the Seat Belt Defect but failed to timely disclose the problem and its consequences to Plaintiffs and Class members;

g.    Whether Defendants knew or should have known about the Seat Belt Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiffs and the Class;

h.    Whether Defendants omitted, concealed, or failed to disclose material facts about the Class Vehicles to Plaintiffs and Class members;

i.    Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

j.    Whether Defendants have engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with the Seat Belt Defect, and any related statutes asserted herein;

k.    Whether Plaintiffs and Class members overpaid for their Class Vehicles;

l.    Whether Plaintiffs and Class members suffered out-of-pocket losses because of the Seat Belt Defect;

m.    Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiff and the Class;

n.    Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

o.    Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount; and

p.    Whether Plaintiffs and the Class are entitled to treble damages and/or punitive damages or other relief.

75.   <u>Typicality</u>:  Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent because Plaintiffs and each Class member purchased a Class Vehicle and were similarly injured

by Defendants' wrongful conduct as described herein.  Plaintiffs and the Class members suffered damages as a direct, proximate result of the same wrongful practices by Defendants.  Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members.  Plaintiffs' claims are based on the same legal theories as the claims of the Class members.

76.    Adequacy:  Federal Rule of Civil Procedure 23(a)(4): Plaintiffs' and their counsel are adequate because their interests do not conflict with the interests of the Class members they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

77.    Superiority:  Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

22

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. On information and belief, Class members can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

## TOLLING OF THE STATUTE OF LIMITATIONS

78.    Defendants have known of the Seat Belt Defect based on pre-production testing, pre-production design failure mode analysis, and production design failure mode analysis, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints.  Defendants were aware (or should have been aware) of the Seat Belt Defect in the Class Vehicles.

79.    Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem.   In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Hyundai is obligated to do.

80.    Defendants had a duty to disclose the Seat Belt Defect to consumers and NHTSA. Contrary to this duty, Hyundai concealed the Seat Belt Defect by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiff and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or Plaintiffs and the Class members about the truth about the Class Vehicles.

81.    Because of the highly technical nature of the Seat Belt Defect, Plaintiffs and Class members could not independently discover it using reasonable diligence.

Before the retention of counsel and without third-party experts, Plaintiff and Class members lacked the necessary expertise to understand the Seat Belt Defect.

82.     Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

## STATE SPECIFIC CLAIMS

### A. Florida Counts

### FLORIDA COUNT I
**Violation of Florida's Deceptive and Unfair Trade Practices Act**
*Fla. Stat. § 501.201, et seq.*
**(On Behalf of the Florida Class)**

83.     Plaintiffs Kris Jarrell, Robert Bomer, and Kathleen Falvo (for purposes of this Count, "Plaintiffs") bring this claim individually and on behalf of the Florida Class against Defendants.

84.     Plaintiffs re-allege and incorporate by reference paragraphs 1–82 as though fully set forth herein.

85.     Plaintiffs and the members of the Florida Class are "consumers" within the meaning of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. § 501.203(7).

86.     Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

87.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade

or commerce." Fla. Stat. § 501.204(1). Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

88.    In the course of their businesses, Defendants failed to disclose and actively concealed the Seat Belt Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

89.    In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Seat Belt Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and the members of the Florida Class.

90.    Defendants actively suppressed the fact that the Seat Belt Defect in Class Vehicles presents a safety hazard.

91.    Plaintiffs do not need to prove Defendants' knowledge of the Seat Belt Defect to state a claim under FDUTPA. Nevertheless, as alleged above, Defendants knew or should have known of the Seat Belt Defect contained in the Class Vehicles. Prior to installing the seat belts in the Class Vehicles, Defendants engaged in preproduction testing and failure mode analysis. Defendants should have known about the Seat Belt Defect after monitoring numerous consumer complaints sent to

NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Seat Belt Defect.

92.     By failing to disclose and by actively concealing the Seat Belt Defect in the Class Vehicles, by marketing them as safe, reliable, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Seat Belt Defect to cause the seat belt pretensioners to explode and propel metal fragments across the vehicle, as well as the corresponding safety hazard to vehicle occupants.

93.     Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer.  Plaintiffs and the members of the Florida Class had no reasonable way to know that the Class Vehicles contained the Seat Belt Defect, which were defective in design and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Seat Belt Defect and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiffs and the members of the Florida Class did.

94.     Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Seat Belt Defect with the intent to mislead Plaintiffs and members of the Florida Class.  Defendants knew, or should have known, that the seat belt systems were defective in design.  Defendants also knew, or

26

should have known, that the Seat Belt Defect in the Class Vehicles could cause the seat belt pretensioners to explode and propel metal fragments across the vehicle. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

95.    Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles with the Seat Belt Defect that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Seat Belt Defect and its corresponding safety hazard.

96.    To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Seat Belt Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles with the Seat Belt Defect. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

97.    Defendants owed Plaintiffs and the members of the Florida Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Seat Belt Defect because Defendants:

    a.  Possessed exclusive knowledge of the Seat Belt Defect and its associated safety hazard;

    b.  Intentionally concealed the foregoing from Plaintiffs and the members of the Florida Class; and/or

      c. Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the members of the Florida Class that contradicted these representations.

98.    Because Defendants fraudulently concealed the Seat Belt Defect in the Class Vehicles, and now that the Seat Belt Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be.  Further, Plaintiffs and the members of the Florida Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

99.    Defendants' failure to disclose and active concealment of the Seat Belt Defect in the Class Vehicles are material to Plaintiffs and the members of the Florida Class.  A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports and remedies them.

100.    Plaintiffs and the members of the Florida Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information.  Had Plaintiffs and the members of the Florida Class been aware of the Seat Belt Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiffs and the members of the Florida Class either would not have paid as much for their vehicles or would not have purchased or leased

them at all.  Plaintiffs and the members of the Florida Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

101.   Plaintiffs and the members of the Florida Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiffs, the Florida Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

102.   As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and the members of the Florida Class have suffered injury-in-fact and/or actual damage.

103.   Plaintiffs and the members of the Florida Class are entitled to recover their actual damages, under Fla. Stat. § 501.211(2), and attorneys' fees under Fla. Stat. § 501.2105(1).

104.   Plaintiffs and the members of the Florida Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the FDUTPA.

**B.  New York Count**

<u>**NEW YORK COUNT I**</u>
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW**
*N.Y. Gen. Bus. Law § 349*
**(On Behalf of the New York Class)**

105.   Plaintiff, Anthony Joseph (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the New York Class against Defendants.

106.   Plaintiff re-alleges and incorporates by reference paragraphs 1–82 as though fully set forth herein.

107.   Plaintiff and members of the New York Class purchased or leased their Class Vehicles for personal or household use.

108.   Plaintiff and members of the New York Class are permitted to bring this action for injunctive relief and actual damages under the New York General Business Law ("NYGBL").  *See* N.Y. Gen. Bus. Law § 349(h).

109.   Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYGBL. See N.Y. Gen. Bus. Law § 349(a).

110.   The NYGBL prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." See N.Y. Gen. Bus. Law § 349(a).

111.   Defendants violated the NYGBL by engaging in deceptive acts or practices directed to consumers in connection with the sale and/or lease of Class Vehicles.

112.   Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Seat Belt Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the New York Class. Plaintiff and members of the New York Class could not reasonably have known about the Seat Belt Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

113.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Seat Belt Defect with the intent to mislead Plaintiff and members of the New York Class. Defendants knew, or should have known, that the Seat Belt Defect was defective in its design. Defendants also knew, or should have known, that the Seat Belt Defect in the Class Vehicles could cause the seat belt pretensioners to explode and propel metal fragments across the vehicle.  Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

114.   Defendants owed a duty to disclose the Seat Belt Defect and its corresponding safety risk to Plaintiff and members of the New York Class because they possessed superior and exclusive knowledge regarding the Seat Belt Defect and the risks associated with the manifestation of Seat Belt Defect.  Rather than disclose the Seat Belt Defect, Defendants engaged in deceptive acts or practices in order to sell additional Class Vehicles and wrongfully transferred the cost of repair or replacement of the Seat Belt Defect to Plaintiff and members of the New York Class.

115.   Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Seat Belt Defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiff and members of the New York Class.

116.   At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Seat Belt Defect and its corresponding safety risk were material to Plaintiff and members of the New

York Class.  When Plaintiff and members of the New York Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' seat belt systems were free from defects.  Had Defendants disclosed that the Seat Belt Defect may fail and/or create an unavoidable safety risk, Plaintiff and members of the New York Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

117.   Defendants had a continuous duty to Plaintiff and members of the New York Class to refrain from unfair and deceptive practices under the NYGBL and to disclose the Seat Belt Defect. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Seat Belt Defect and corresponding safety risk are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment, suppression and/or omission of the Seat Belt Defect in violation of the NYGBL, Plaintiff and members of the New York Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Seat Belt Defect and/or actual damages in the amount of the cost to replace the Seat Belt Defect and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive acts or practices in the course of their business.

118.   Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

119.    Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Seat Belt Defect and corresponding safety risk.

120.    Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiff and members of the New York Class as well as the public.

121.    Defendants knew or should have known of the Seat Belt Defect contained in the Class Vehicles.  Prior to installing the seat belts in the Class Vehicles, Defendants engaged in preproduction testing and failure mode analysis.  Defendants should have known about the Seat Belt Defect after monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Seat Belt Defect.

122.    As a direct and proximate result of Defendants' violations of the NYGBL, Plaintiff and members of the New York Class have suffered actual damages and/or injury in fact.

123.    As a result of Defendants' unlawful conduct, Plaintiff and members of the New York Class are entitled to actual damages, treble damages, costs of litigation, attorneys' fees, injunctive and other equitable relief. See N.Y. GEN. BUS. LAW § 349(h).

**C. Illinois Count**

### ILLINOIS COUNT I
### VIOLATION OF ILLINOIS CONSUMER FRAUD
### AND DECEPTIVE BUSINESS PRACTICES ACT
### *815 ILCS 505/1, et seq. and 720 ILCS 295/1A*
### **(On Behalf of the Illinois Class)**

124.    Plaintiff, Nathaniel Segura (for purposes of this Count, "Plaintiff") brings this claim individually and on behalf of the Illinois Class against Defendants.

125.    Plaintiff re-alleges and incorporates by reference paragraphs 1–82 as though fully set forth herein.

126.    Defendants are "person[s]" as that term is defined in 815 ILCS 505/1(c).

127.    Members of the Illinois Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

128.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."  815 ILCS 505/2.

129.    In the course of their business, Defendants violated the ICFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles, as detailed above.

130.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and/or the Seat Belt Defect, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, as prohibited by 815 ILCS 505/2.

131.    Defendants' unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Illinois Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

132.    Defendants' scheme and concealment of the Seat Belt Defect and true characteristics of the passenger safety systems in the Class Vehicles were material to Plaintiff and Illinois Class members, as the Defendants intended. Had they known the truth, Plaintiff and Illinois Class members would not have purchased the Class Vehicles, or would have paid significantly less for them.

133.    Plaintiff and Illinois Class members had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning the facts that Defendants had concealed or failed to disclose.  Plaintiff and Illinois Class members did not, and could not, unravel Defendants' deception on their own.

134.    Defendants had an ongoing duty to Plaintiff and Illinois Class members to refrain from unfair or deceptive practices under the ICFA in the course of their business.  Specifically, Defendants owed Plaintiff and Illinois Class members a duty to disclose all the material facts concerning the Seat Belt Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiff and Illinois Class members, and/or they made misrepresentations that were misleading because they were contradicted by withheld facts.

135.    Defendants' violations present a continuing risk to Plaintiff and Illinois Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

136.    Plaintiff and the Illinois Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information Defendants had an ongoing duty to all their customers to refrain from unfair and deceptive practices under the ICFA.  All owners of Class Vehicles suffered ascertainable loss as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

137.    Plaintiffs do not need to prove Defendants' knowledge of the Seat Belt Defect to state a claim under the ICFA. Nevertheless, Defendants knew or should have known of the Seat Belt Defect contained in the Class Vehicles.  Prior to installing the seat belts in the Class Vehicles, Defendants engaged in preproduction testing and failure mode analysis.  Defendants should have known about the Seat Belt Defect after

monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Seat Belt Defect.

138.   As a direct and proximate result of Defendants' violations of the ICFA, Plaintiff and members of the Illinois Class have suffered injury-in-fact and/or actual damage.

139.   Pursuant to 815 ILCS 505/10a(a), the Illinois Class seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or was grossly negligent.

140.   Plaintiff and the Illinois Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

## REQUEST FOR RELIEF

141.   WHEREFORE, Plaintiffs, Individually and on behalf of Class members, respectfully request the Court enter judgment in their favor and against Defendants as follows:

a.   Certification of the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure, including appointment of Plaintiffs as class representatives and appointment of Plaintiffs' counsel as Class Counsel;

b.   Damages, including actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

c.  And order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d.  An award of reasonable costs and attorney fees; and

e.  Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

142.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury for all claims so triable.

Dated: November 21, 2022

Respectfully submitted,

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman
Scott P. Schlesinger
Jonathan R. Gdanski
Sarah J. Schultz

**SCHLESINGER LAW OFFICES, P.A.**
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
scott@schlesingerlaw.com
jonathan@schlesingerlawoffices.com
jhaberman@schlesingerlaw.com
sarah@schlesingerlaw.com

*Attorneys for Plaintiff and the Class*