UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA — ORLANDO DIVISION

KRIS JARRELL, ET AL., individually and
on behalf of those similarly situated,

    Plaintiffs,

v.                                Case No. 6:22-cv-00990-CEM-EJK

HYUNDAI MOTOR AMERICA, ET AL.,

    Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

    Defendants Hyundai Motor America, Hyundai Motor Company and Hyundai Motor Manufacturing Alabama, LLC (collectively, "Defendants" or "Hyundai") move this Court for an order dismissing the Second Amended Complaint ("SAC") of Plaintiffs Kris Jarrell, Robert Bomer, Kathleen Falvo, Anthony Joseph and Nathaniel Segura under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and as prudentially moot under Rule 12(b)(1). The specific grounds for the Motion are in the Memorandum of Points and Authorities below.

**I.      PRELIMINARY STATEMENT**

    This lawsuit is a wasteful attempt to profit from Hyundai's good-faith efforts to protect consumers. Before Plaintiffs filed the SAC (or their First Amended Complaint, for that matter), Hyundai Motor America ("HMA") announced a recall addressing the seatbelt pretensioner issue alleged – *if* it existed in Plaintiffs' vehicles at all. The recall is over-inclusive, as the percentage of recalled vehicles with the

1

alleged defect is estimated at 1%. (Request for Judicial Notice ("RJN") Exs. 1, 3). The recall offers remedies at no cost, and no matter if a vehicle is under warranty. (*Id.*). HMA also has agreed to reimburse out-of-pocket expenses customers may have incurred. (*Id.*). As of October 27, 2022, HMA has remedied more than 50,000 vehicles under the recall. (*See* RJN Ex. 6). Despite the thorough investigation, disclosures and remedies, Plaintiffs elected to sue for consumer fraud and initiate a sprawling class action where none was needed.[1] The SAC does not state a valid claim, and Plaintiffs' remaining claims[2] should be dismissed for *four* core reasons.

*First*, **the SAC remains moot**. Plaintiffs allege no facts showing they have sustained damages, and the recall will remedy any potential seatbelt pretensioner issue in their vehicles, if it has not already. The Court should thus dismiss the SAC as prudentially moot. (Section III(B), *infra*). At minimum, the case should be limited to the vehicles Plaintiffs bought or leased. (Section III(C), *infra*).

*Second*, **Plaintiffs' conclusory allegations do not state a consumer fraud claim.** The SAC asserts three consumer fraud claims under Florida, New York and

---

[1] Plaintiffs' lawsuit also names HMA's parent, Hyundai Motor Company ("HMC"), and subsidiary, Hyundai Motor Manufacturing Alabama, LLC ("Hyundai Alabama").

[2] Plaintiffs' First Amended Complaint (FAC) included 19 causes of action, including 5 on behalf of a putative nationwide class. (D.E. 22). Hyundai moved to dismiss the FAC and filed a motion to compel arbitration of California Plaintiff Timothy Cordial's claims. (D.E. 34, 36). Implicitly conceding Hyundai's arguments, Plaintiffs sought leave to file the SAC. (D.E. 43, 44). The SAC includes just 3 claims on behalf of putative statewide classes in Florida, New York and Illinois. (D.E. 46). Mr. Cordial also has been dismissed. (*See id.*).

Illinois law, yet provides no well-pleaded facts showing any unlawful conduct, let alone unlawful conduct that caused Plaintiffs harm. (Section III(D)(1), *infra*). Thus, Plaintiffs have not alleged the elements of their consumer fraud claims. (*Id.*).

*Third*, **Plaintiffs allege no facts to support their core theory.** The gist of the SAC is that Defendants supposedly knew about a seatbelt pretensioner defect and intentionally concealed it at the point of sale. But Plaintiffs allege no facts to support this unfounded conclusion, nor any facts showing that Defendants had pre-sale knowledge of a defect they could have disclosed. (Section III(D)(2), *infra*). Without these facts, Plaintiffs' claims are deficient and should be dismissed for this additional reason.

*Fourth*, **no basis for injunctive relief is pled.** The injunctive relief requests fail, as Plaintiffs allege no concrete, imminent threat of future injury. (Section III(E), *infra*).

For all of these reasons, the SAC should be dismissed. Plaintiffs have amended multiple times already, and further leave to amend should be denied.

## II.    BACKGROUND

**A.    No Plaintiffs allege any issue using their vehicles.**

Five Plaintiffs allege that they "own" a 2021 or 2022 Hyundai Elantra in one of three states. (SAC ¶¶ 9-13).[3] No Plaintiffs allege when they bought their vehicles or

---

[3] Plaintiffs Kris Jarrell, Robert Bomer and Kathleen Falvo are Florida residents. (SAC ¶¶ 9-11). Plaintiff Anthony Joseph is a New York resident. (*Id.* ¶ 12). And Plaintiff Nathanial Segura is an Illinois resident. (*Id.* ¶ 13). Falvo alleges purchase of a 2022 Elantra, and all other Plaintiffs allege purchase of a 2021 Elantra. (*Id.* ¶¶ 9-13).

where. (*Id.*). Plaintiffs speculate that each vehicle has a defective seatbelt pretensioner, but no Plaintiffs allege (i) a defect manifested in their vehicles, (ii) that they repaired their seatbelt pretensioners (under the recall or otherwise), or (iii) that the pretensioners affected their use of the vehicles. (*Id.*). Similarly, although Plaintiffs vaguely state that they were "aware of" Hyundai's "marketing messages," no Plaintiffs allege what they saw, when they saw it, where or how it influenced their purchasing decisions. (*Id.*).

**B.    Plaintiffs' conclusory allegations do not plausibly show unlawful conduct.**

The SAC speculates that Defendants *must* have committed several consumer protection violations because a seatbelt pretensioner recall was issued to protect against the risk of potential injuries. (*See* SAC ¶¶ 36-66). But the SAC offers no facts to support this speculation. And the publicly available recall documents (cited in the SAC and posted on the National Highway Traffic Safety Administration's ("NHTSA") website) contradict it:

- On September 15, 2021, Hyundai learned of a single incident involving a 2021 Elantra vehicle where the driver-side seatbelt pretensioner allegedly deployed abnormally. (SAC ¶ 42; RJN Exs. 2, 4). Hyundai began investigating immediately, targeting seatbelt pretensioners in the same production lot as the incident pretensioner. (SAC ¶¶ 43-44; RJN Exs. 2, 4). On October 6, 2021, although the cause of the abnormal deployment remained unknown, a safety recall was issued on vehicles equipped with pretensioners from the same production lot to conduct an analysis. (SAC ¶ 45; RJN Exs. 2, 4).

- In December 2021, Hyundai learned of a second abnormal deployment on a different vehicle—a 2020 Accent—in Puerto Rico. On December 10, 2021, the safety recall was expanded to include 2020-2021 Accent vehicles equipped with pretensioners from a different production lot. (SAC ¶¶ 46-47; RJN Exs. 2, 4).

- In February 2022, Hyundai learned of a third incident on a 2022 Elantra vehicle in Singapore, involving a later pretensioner production lot. On February 24, 2022, the recall was expanded to 2022 Elantra and Elantra Hybrid vehicles potentially equipped with pretensioners from that production lot. (SAC ¶ 49; RJN Exs. 2, 4).

- In March and April 2022, Hyundai continued thorough investigations to determine why these few vehicles had exhibited an abnormal pretensioner deployment. By April 25, 2022, Hyundai was able to successfully replicate the abnormal deployment condition through extensive testing and develop a remedy. (SAC ¶¶ 50-55; RJN Exs. 2, 4). About two weeks later, on May 11, 2022, Hyundai elected to deliver the remedy to all Elantra and Accent vehicles potentially equipped with the subject pretensioner, covering certain 2019-2022 Accent, 2021-2023 Elantra and 2021-2022 Elantra Hybrid vehicles. (SAC ¶ 56; RJN Exs. 1-4).[4]

Months before Plaintiffs filed the SAC, HMA notified dealers and consumers of the recall. (*See* SAC ¶¶ 40-41; RJN Exs. 1, 3, 5). Under the recall, all seatbelt pretensioners in affected vehicles will be repaired at no cost, whether or not the vehicles are still covered under HMA's New Vehicle Limited Warranty. (*Id.*). HMA also is providing consumers "reimbursement for out-of-pocket expenses incurred to obtain a remedy for the recall condition . . . ." (*Id.*).

In total, Hyundai is aware of only three abnormal deployments of the seatbelt pretensioners worldwide. (RJN Exs. 2, 4). Hyundai's testing revealed that abnormal deployment resulted from a combination of factors, including "occupant loading of the seat belt" and vehicle-specific details like "load limiter specifications, [air bag control unit] logic, and vehicle crash severity/duration." (RJN Ex. 2). Of the vehicles

---

[4] In July 2022, the 2019 Accent and 2023 Elantra were removed, because records confirmed these vehicles either did not use the subject pretensioner or were repaired before wholesale. (RJN Ex. 2).

covered by the recall, the "estimated percentage" with a potential "defect" is "1%." (RJN Exs. 1, 3). As of October 27, 2022, almost 24% of the recall population has been remedied. (RJN Exs. 5, 6).

### III.   PLAINTIFFS' ALLEGATIONS DO NOT STATE A CLAIM

### A.   Standards for motions to dismiss

The plausibility standard for a Rule 12(b)(6) motion to dismiss "asks for more than a sheer possibility that a defendant has acted unlawfully." *Stein v. TitleMax of Ga., Inc.*, 819 F. App'x 809, 813 (11th Cir. 2020).[5] "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* A court need not accept as true plaintiff's legal conclusions or "legal conclusion[s] couched as [] factual allegation[s]." *Davis v. Tony*, 2022 WL 1224261, at *2 (S.D. Fla. Apr. 25, 2022); *see Yeh-Ho v. Merrill Lynch Pierce Fenner & Smith Inc.*, 2022 WL 1446657, at *2 (S.D. Fla. Apr. 5, 2022) ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."). On a Rule 12(b)(6) motion, "[a] document outside the four corners of the complaint" may be considered if "central to the plaintiff's claims" and "undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

Rule 12(b)(1), meanwhile, "provides the proper framework for evaluating a motion to dismiss on grounds of mootness." *Davis*, 2022 WL 1224261, at *4. "[U]nder

---

[5] Unless otherwise noted, all internal citations and quotation marks are omitted, and all emphases are added.

Rule 12(b)(1), the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) . . . ." *Id.* at *3.

**B.      The SAC is prudentially moot and should be dismissed.**

"[A]n action that is moot cannot be characterized as an active case or controversy" under Article III. *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). Prudential mootness is a legal doctrine closely related to Article III that addresses the court's discretion in granting relief. *See Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 Fed. App'x 955, 962 (11th Cir. 2012). Under this doctrine, a court may dismiss a case, even if it is not constitutionally moot, if the case is "so attenuated that considerations of prudence and comity for [coordinate branches of government] . . . counsel the court to stay its hand, and to withhold relief it has the power to grant." *Id.* The central inquiry is whether factual or legal changes since the lawsuit began have made the court unable to provide meaningful relief. *See id.*

HMA's repair and reimbursement program under the NHTSA-regulated recall provides Plaintiffs with a meaningful remedy and moots their claims. (SAC ¶¶ 40-41; RJN Exs. 1, 3). Not only will consumers be able to obtain free repair of their vehicles, they also may recover out-of-pocket costs. (*Id.*). Almost one-quarter of the recall population was remedied *before* Plaintiffs filed the SAC. (*See* RJN Ex. 6).

In recent cases with similar facts, courts have applied the prudential mootness doctrine to dismiss when, as here, the defendant conducts a NHTSA-regulated recall. *See Hadley v. Chrysler Grp. LLC*, 624 Fed. App'x 374, 376-79 (6th Cir. 2015) ("There

7

was never a dispute" as to whether "New Chrysler would repair [the] defect . . . [or] reimburse people who paid to have their vehicles repaired[.]"); *Winzler v. Toyota Motor Sales USA, Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012) ("[T]here remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits."); *Cheng v. BMW of N. Am., LLC*, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013) ("[A]s a practical matter, it is unclear how Plaintiff can demonstrate injury in light of BMW's offer to completely repair the roll away defect."); *Sharp v. FCA U.S. LLC*, 2022 WL 14721245, at *6-7 (E.D. Mich. Oct. 25, 2022) (agreeing that a NHTSA-regulated recall bears "special gravity").

Although some courts have permitted claims for diminution in value in the recall context,[6] several courts have found diminution claims moot as well. *See, e.g.*, *Sharp*, 2022 WL 14721245, at *10 ("[T]he anticipated repairs will remove the defect upon which Plaintiffs' claim for benefit-of-the-bargain damages is based."); *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105, at *6 (N.D. Cal. Aug. 21, 2019) (holding that plaintiffs lacked standing to pursue overpayment claims after Ford issued recall for seatbelt pretensioners). Here, as in *Sharp*, Plaintiffs have not plausibly alleged that any defect remains after the recall remedy is completed, or any diminished value in vehicles equipped with the remedy. *See Sharp*, 2022 WL 14721245, at *10 ("Plaintiffs offer only a hypothetical possibility that their vehicles will not be adequately repaired."); *see also*

---

[6] *See, e.g.*, *McCabe v. Daimler AG*, 2015 WL 11199196, at *5 (N.D. Ga. Aug. 19, 2015) (declining to apply prudential mootness doctrine because plaintiffs alleged damage in the form of diminished vehicle value); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1220 (S.D. Fla. 2017) (similar).

*Sugasawara*, 2019 WL 3945105, at *6 ("Plaintiffs have failed to adequately allege that the Defect remains after the recall remedy has been completed.").

Plaintiffs also have not adequately alleged that they suffered *any* injury. *See, e.g.*, *Lusby v. Hyundai Motor Co.*, 2020 WL 13358561, at *6 (M.D. Fla. Mar. 9, 2020) (dismissing conclusory diminution in value allegations). As in *Lusby*, Plaintiffs do not allege "experiencing the [pretensioner] defect, discontinuing use of their vehicle, decrease in Kelly Blue Book value, degradation of performance, incurring out-of-pocket expenses, loss of use, inability to re-sell their vehicle in the open market, or [any] other facts about the market for their vehicles." *Id.*[7] Thus, between the remedies Plaintiffs admit are being provided through Hyundai's over-inclusive, NHTSA-regulated recall, and their conclusory allegations about supposed damages, the SAC provides no basis to proceed.

## C.    Plaintiffs lack standing to bring claims over vehicles they did not purchase.

If the SAC is not dismissed as moot (it should be), the claims should be narrowed to the vehicles Plaintiffs allegedly bought or leased. Many courts in the Eleventh Circuit have dismissed claims over products the named plaintiffs did not purchase. *See, e.g.*, *Leon*, 301 F. Supp. 3d at 1221 ("[A] class representative in a consumer class action may not bring claims on behalf of purchasers of a product that the representative did not herself purchase."); *Blobner v. R.T.G Furniture Corp.*, 2019

---

[7] Plaintiffs have not even shown that their vehicles have a defect in the first place. According to the documents *they* cite, the percentage of recalled vehicles with a defect is about 1%. (RJN Exs. 1-4).

WL 3808130, at *3-4 (M.D. Fla. July 24, 2019) (similar). That principle applies here.

Plaintiffs purport to assert claims over the 2019-2022 Accent, 2021-2023 Elantra and 2021-2022 Elantra Hybrid. (SAC ¶ 8). But the only vehicles Plaintiffs allegedly bought or leased are the 2021-2022 Elantra. (*Id.* ¶¶ 9-13). In other words, Plaintiffs did not suffer (and could not have suffered) any injury related to the 2019-2022 Accent, 2023 Elantra or 2021-2022 Elantra Hybrid. Without an injury, they lack standing. *Blobner*, 2019 WL 3808130, at *3 ("Many courts in this district have examined this exact issue in great depth and concluded that the plaintiffs did not have standing to bring claims for products that they did not purchase."). Thus, the Court should dismiss all claims involving the 2019-2022 Accent, 2023 Elantra and 2021-2022 Elantra Hybrid, which no Plaintiffs bought or leased.[8]

## D.    Plaintiffs' statutory consumer fraud claims fail for multiple reasons.

Plaintiffs' Florida Deceptive and Unfair Trade Practices Act (FDUTPA), New York General Business Law (GBL) and Illinois Consumer Fraud Act (ICFA) claims are deficient for at least two more reasons. *First*, Plaintiffs' allegations do not meet the plausibility standard of Rule 8, let alone Rule 9(b)'s particularity standard. *Second*, Plaintiffs' omission-based claims do not allege facts showing that Hyundai had pre-sale knowledge of any purported defect it could have disclosed.

---

[8] Plaintiffs might argue that they may bring claims over similar products. Yet this argument ignores the core issue, which is what injuries *Plaintiffs* suffered from *their* purchases. "Sufficient similarity" also has been rejected as a basis for standing in the Eleventh Circuit. *See Leon*, 301 F. Supp. 3d at 1221; *Ohio State Troopers Ass'n v. Point Blank Enters.*, 481 F. Supp. 3d 1258, 1273-74 (S.D. Fla. 2020) (rejecting similarity of product models as basis to confer standing).

### 1. The SAC provides no plausible or particularized allegations of wrongful conduct by Hyundai.

The ICFA claim must satisfy Rule 9(b)'s particularity requirement. *See, e.g.,* *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*, 2010 WL 624709, at *5-7 (N.D. Ill. Feb. 18, 2010) (Rule 9(b) applies to ICFA claims sounding in fraud or deception); *Quitno v. Gen. Motors, LLC*, 2020 WL 777273, at *4 (N.D. Ill. Feb. 18, 2020) (explaining that plaintiffs cannot evade Rule 9(b)'s particularity requirement by citing the "unfair practices" prong of the ICFA). The Court also should apply Rule 9(b) to Plaintiffs' FDUTPA and GBL claims, which, like the ICFA claim, are grounded in fraud. (*See* SAC ¶¶ 58, 63, 64, 89, 94, 96, 98, 112, 113, 119, 132, 139). *See also Jackson v. Anheuser-Busch Inbev SA/NV, LLC*, 2021 WL 3666312, at *8 (S.D. Fla. Aug. 18, 2021) (finding that the emerging trend is to apply Rule 9(b) to FDUTPA claims grounded in fraud); *Fid. Nat'l Fin. v. Attachmate Corp.*, 2017 WL 3726687, at *3 (M.D. Fla. Mar. 1, 2017) (similar).[9]

Even if the Court does not apply Rule 9(b) (it should), Plaintiffs still must provide well-pleaded facts plausibly supporting the elements of their claims. *See Small v. GM, LLC*, 2022 U.S. Dist. LEXIS 93049, at *25-26 (S.D. Fla. May 24, 2022) (dismissing FDUTPA claim based on conclusory allegations about GM's supposedly deceptive trade practices); *Jackson v. Bank of Am., N.A.*, 2017 WL 5598856, at *7-8

---

[9] *See also In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *14 (C.D. Cal. Oct. 20, 2014) (applying Rule 9(b) to FDUTPA and GBL claims sounding in fraud); *Diaz v. FCA US LLC*, 2022 WL 4016744, at *20, 24 ns. 27, 32 (D. Del. Sep. 2, 2022) (ruling similarly as to GBL claims).

(W.D.N.Y. Nov. 21, 2017) ("Plaintiffs' accusations concerning the GBL are conclusory."). Plaintiffs have not met either standard.

*First*, the gist of the SAC is that Defendants intentionally misrepresented and "actively concealed" that seatbelt pretensioners in Plaintiffs' vehicles may explode during collisions. (*See, e.g.*, SAC ¶¶ 57-64, 88-99, 112-119, 129-137). But the SAC offers no facts, particularized or plausible, to support this accusation. If anything, Plaintiffs' allegations show the opposite. The recall documentation cited in the SAC shows that Hyundai immediately: (i) investigated the isolated, abnormal deployment incidents; (ii) publicly issued safety recalls covering the pretensioner lots associated with the incidents; (iii) conducted thorough testing to determine a root cause; (iv) shared the results of its investigation publicly; and (v) issued an expanded, over-inclusive recall to protect consumers. (SAC ¶ 36 n.6, ¶ 42 n.13; RJN Exs. 1-6). None of this is fraudulent or deceptive, and the SAC's conclusory allegations show nothing otherwise. *See Small*, 2022 U.S. Dist. LEXIS 93049, at *21-27 (finding nothing fraudulent, unfair or deceptive about GM recall to repair tail lamp defect in Yukon vehicles, including because "public disclosures to acknowledge and address problems" do not show concealment); *Hache v. Damon Corp.*, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (dismissing FDUTPA claim with no facts showing "significant deception or malice[,]" rather than a breach of warranty at most); *Leon*, 301 F. Supp. 3d at 1226 ("Plaintiffs make no particularized allegations about what MBUSA did to violate FDUTPA[.]") To the contrary, Hyundai's public announcements "are of the opposite of" concealment and non-disclosure. *See Padilla v. Porsche Cars N. Am., Inc.*,

391 F. Supp. 3d 1108, 1115 (S.D. Fla. 2019); *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *12 (N.D. Ill. Sep. 1, 2017) ("Darne's concealment argument is contradicted . . . by the very evidence to which he points to assert Ford's alleged knowledge of the defects: . . . the 2007 recall.").[10]

**Second**, Plaintiffs allege in generic fashion that they "relied" on Hyundai's "uniform and pervasive marketing messages" about safety and dependability. (SAC ¶¶ 9-13). But Plaintiffs do not allege (i) the *content* of any specific representation they relied on, (ii) *who* made any alleged representation, (iii) *how* the alleged representations were communicated (orally, in writing, in a store, online?), (iv) *when* they saw the alleged representations, (v) *how* the alleged representations were deceptive or (vi) *how* the alleged representations caused harm. Without these facts, Plaintiffs' claims fail. *See, e.g.*, *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 27, 2013) (dismissing FDUTPA claim due to lack of specificity as to misrepresentation and concealment allegations); *Devey v. Big Lots, Inc.*, 2022 WL 6827447, at *4-5 (W.D.N.Y. Oct. 12, 2022) (dismissing GBL claims because plaintiff did not "allege that she actually viewed the misleading statement prior to making her decision to purchase, [or] set forth 'where, when and how [she] came to view' it"); *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *10 (N.D. Ill. Dec. 18, 2015) (dismissing ICFA claim for failure to plead with particularity reliance on any misrepresentation or

---

[10] *See also Hackler v. Gen. Motors LLC*, 2022 WL 17337470, at *4 (S.D. Ga. Nov. 22, 2022) (noting the Eleventh Circuit's instruction that concealment requires willful acts using fraudulent means).

omission by Ford, or damage from such reliance).

Indeed, Plaintiffs offer no facts showing that a purported misrepresentation or omission affected their purchasing decisions at all. *See, e.g.*, *Pa. Emple. Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 481-82 (D. Del. 2010) (applying New York law and dismissing GBL claims for this reason); *Devey*, 2022 WL 6827447, at *4-5 (similar); *see also In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *14-15 (dismissing GBL and FDUTPA claims together for failure to allege causation); *Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *15 (N.D. Ga. Mar. 23, 2016) (analyzing Florida law and agreeing that individualized allegations of causation are required); *Perisic v. Ashley Furniture Indus.*, 2018 WL 3391359, at *6 (M.D. Fla. June 27, 2018) (agreeing that FDUTPA claim did not establish causation because plaintiff did not review purportedly deceptive statements); *Drake v. Toyota Motor Corp.*, 2021 WL 2024860, at *4 (C.D. Cal. May 17, 2021) (finding ICFA claim deficient without allegations showing how plaintiff was deceived by a statement or omission).

***Third***, as shown above (Section III(B)), Plaintiffs' conclusory allegations fail to show injury. *See, e.g.*, *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 2010 WL 528477, at *4 (S.D. Fla. Feb. 11, 2010) (dismissing FDUTPA claim for failure to plead diminution in value; "there is absolutely no information given as to fair market value, attempts to sell, offers, or appraisals on value."); *Lusby*, 2020 WL 13358561, at *6 (similar); *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 362-63 (E.D.N.Y. 2022) (explaining that conclusory allegations of harm, such as that plaintiff "would not have

14

bought the product absent the defendant's deception[,]" are insufficient to state a GBL claim); *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 823 (N.D. Ill. 2016) (finding conclusory allegations of property damage failed to state the specific, actual damages required for an ICFA claim).

*Fourth*, Plaintiffs fail to differentiate between HMA, HMC and Hyundai Alabama, instead lumping all "Defendants" together for every allegation. (*See, e.g.*, SAC ¶¶ 58-66, 78-140). This is improper, and the consumer fraud claims should be dismissed for this reason as well. *See, e.g.*, *Leon*, 301 F. Supp. 3d at 1226-27 (dismissing FDUTPA claim because plaintiffs' allegations, "which do not distinguish the conduct of [the Mercedes] Defendants, are insufficient to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure, let alone Rule 9(b)").

In sum, the SAC fails to allege unlawful conduct in violation of the FDUTPA, GBL or ICFA, fails to allege causation, and fails to allege injury. Every element of the claims is deficient under Rule 8 and Rule 9(b).[11]

---

[11] When Plaintiffs sought leave to file the SAC, they argued that their consumer fraud claims were sufficient (Dkt. 43 at pp. 5-10), relying on *Lewis v. Mercedes-Benz*, 530 F. Supp. 3d 1183 (S.D. Fla. 2021). But the facts in *Lewis* were completely different, as was the level of factual detail. (*See* Case No. 9:19-cv-81220-RAR, First Amended Complaint, Dkt. 22). For example, unlike this case, *Lewis* did not involve an ongoing recall, a prompt investigation and public disclosure, or offers of free repair and reimbursement. (*See id.* ¶¶ 1-18). Just the opposite, the purported deceptive conduct at issue in *Lewis* was defendants' *failure to recall*, based on detailed allegations of concealment following years of NHTSA complaints, prior lawsuits and Technical Service Bulletins that defendants themselves had issued. (*See id.* ¶¶ 8-10, 130-142, 148, 155-182). The facts in *Lewis* have no application here.

**2.      The omission-based claims also should be dismissed because Plaintiffs do not show that Hyundai was aware of any defect before sale.**

The omission-based claims also fail because Plaintiffs allege no allege facts showing Defendants knew of a seatbelt pretensioner defect that they could have disclosed before sale. *See, e.g.*, *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *20 (C.D. Cal. Apr. 13, 2017) (finding multi-state consumer fraud claims, including from Florida and Illinois, deficient due to lack of pre-sale knowledge); *Wesley v. Samsung Elecs. Am., Inc.*, 2021 WL 5771738, at *3-5 (D.N.J. Dec. 3, 2021) (dismissing consumer fraud claims, including from Florida, Illinois and New York, for failure to allege facts showing pre-sale knowledge); *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 243-44 (S.D.N.Y. Feb. 16, 2022) (dismissing GBL claim because plaintiffs did not "plausibly allege that Pfizer knew about the nitrosamine contamination before it issued its recall"); *Sherwin v. Samsung Elecs. Am.*, 2018 WL 11216896, at *4 (N.D. Ill. Mar. 2, 2018) (dismissing ICFA claim because plaintiff failed to allege that defendant "had knowledge of the purported defect").[12]

If Plaintiffs try to argue that knowledge is not an element of any of their consumer fraud claims, they would be ignoring their own allegations, which are based

---

[12] *Accord Ohanian v. Apple Inc.*, 2022 WL 826415, at *2 (S.D.N.Y. Mar. 18, 2022) (dismissing GBL claims "because the Complaint does not allege that T-Mobile was aware of what it failed to disclose"); *Hart*, 191 F. Supp. 3d at 822-23 (dismissing ICFA claim for failure to allege knowledge); *Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551, at * 5 (N.D. Ill. May 16, 2013) (dismissing ICFA claim on the same ground); *Hauck v. Advanced Micro Devices, Inc.*, 2019 WL 1493356, at *11 (N.D. Cal. Apr. 4, 2019) (dismissing FDUTPA omission claim because plaintiff failed to allege defendant had "actual knowledge" of the information omitted).

16

on the supposed intentional concealment of a pretensioner defect. (SAC ¶¶ 57-64, 79-80, 88-99, 112-119, 129-134). In other words, Plaintiffs must allege facts supporting the claims *they* bring. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 (11th Cir. 2012) (affirming dismissal of FDUTPA claim because plaintiffs alleged knowing omission in violation of duty to disclose, but failed to support that allegation); *Compton v. GM LLC*, 2020 WL 13469725, at *4 (N.D. Fla. Mar. 31, 2020) (dismissing FDUTPA claim because allegations did not support "the crux" of the claim, that "GM had knowledge of the defect and refused to disclose it").

Here, the SAC provides only conjecture, with no *facts*, that Hyundai knew of a pretensioner defect in Plaintiffs' vehicles at the time of sale.

*First*, Plaintiffs speculate that Hyundai knew of a defect based on unspecified "pre-production testing, failure mode analysis, and reports to authorized dealers, repair centers, and complaints to the NHTSA." (SAC ¶¶ 5, 78). But these rote conclusions are entitled to no weight, as Plaintiffs identify no tests, analyses, reports or complaints, or any other facts. *See, e.g.*, *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 308 (N.D.N.Y. 2019) ("As to the alleged pre-production testing and pre-and post-production design failure mode analysis, Plaintiff does not allege any facts plausibly suggesting that this testing in fact showed any sort of defect in the transmission in the Class Vehicle[.]"); *Belkin v. Prince Lionheart, Inc.*, 2019 WL 13217967, at *2 (S.D. Fla. Jan. 4, 2019) ("[S]tating that 'Target was aware of the defect' without a proper factual basis is a conclusory statement and a 'threadbare recital' that runs afoul of *Twombly* and *Iqbal*."); *Wesley*, 2021 WL 5771738, at *3-5 (dismissing Florida, Illinois and New

17

York claims based on conclusory allegations of knowledge through purported "complaints," "testing," and "reports"); *DeMaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *11 (N.D. Ill. Feb. 1, 2016) (rejecting argument that "Nissan's opportunity to test means they tested and knew at the relevant point in time"); *Sherwin*, 2018 WL 11216896, at *4 (that a company "manufactures the product alone says nothing about what it knew and failed to disclose").[13]

**Second**, Plaintiffs allege nothing showing *pre-sale* knowledge. Plaintiffs claim that Defendants knew of a defect as of September 2021 based on one abnormal deployment, as relayed by NHTSA. (SAC ¶ 3). Yet Plaintiffs allege no facts showing that Defendants could or should have known of a defect in an entire vehicle line (let alone multiple vehicle lines) based on this single incident, before an investigation began. *See Stewart v. Electrolux Home Prods.*, 2018 WL 1784273, at *9 (E.D. Cal. Apr. 13, 2018) (complaints were not "so widespread that Electrolux had to have known" of a defect in "every single residential electric oven sold"). Nor do Plaintiffs allege when they bought their vehicles. (*See* SAC ¶¶ 9-13). Thus, even if Plaintiffs had adequately alleged that Hyundai knew of a model-wide pretensioner defect as of September 2021 (they have not), they still have not alleged Hyundai had that knowledge *before* Plaintiffs made *their* purchases. *See Compton*, 2020 WL 13469725, at *4 ("[W]hat relevant notice

---

[13] Plaintiffs generic conclusion that Defendants "should have known about the Seat Belt Defect after monitoring numerous consumer complaints" (SAC ¶ 91) is not plausible, as Plaintiffs do not cite a single such complaint in their pleading. *See also Morales v. Kimberly-Clark Corp.*, 2020 WL 2766050, at *6 (S.D.N.Y. May 27, 2020) (finding that the mere existence of complaints did not give rise to an inference that defendant failed to disclose material information).

GM had will turn on when the act took place. For example, if the unfair act took place in 2014, it won't much matter what knowledge GM had in 2017."); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013) ("Without these dates, it is impossible for the Court to know whether these complaints put Honda on notice before or after Plaintiffs purchased their GL 1800s.").[14]

In sum, Plaintiffs have not alleged Hyundai's pre-sale knowledge of a defect, and thus their omission-based claims fail for an additional, threshold reason.

**E.    Plaintiffs lack standing to pursue a request for injunctive relief.**

To seek prospective injunctive relief, Plaintiffs must personally show "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of <u>future</u> injury." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1229-30 (11th Cir. 2021) (emphasis in original). They also must show that the "future injury is imminent—that there is a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future." *Id.*

With no factual support, Plaintiffs claim past injury and out-of-pocket loss. (*See, e.g.*, SAC ¶¶ 7, 65-66). Yet they do not allege they will buy or lease an Elantra, Elantra Hybrid or Accent vehicle in the future. And they do not allege any threat of being harmed again. To the contrary, the recall moots the need for prospective injunctive

---

[14] *Accord Harris*, 586 F. Supp. 3d at 243-44 (dismissing GBL claims because plaintiffs' allegations did not "plausibly establish that Pfizer knew about any" medication problem "at the time" plaintiffs purchased the medication); *Sherwin*, 2018 WL 11216896, at *5 ("Later complaints are irrelevant to whether [plaintiff] has sufficiently alleged what SEA knew at the time she made her purchase.").

relief. (RJN Exs. 1-6). Thus, Plaintiffs have not shown a concrete, imminent threat of future injury, and their injunctive relief requests should be dismissed. *See Cox v. Porsche Fin. Servs.*, 337 F.R.D. 426, 434 (S.D. Fla. 2020) ("Plaintiff fails to plead a threat of future harm sufficient to have standing for FDUTPA injunctive relief."); *Sorin v. Folger Coffee Co.*, 2021 WL 5545292, at *2 (S.D. Fla. Mar. 5, 2021) (similar); *Berni v. Barilla S.P.A.*, 964 F.3d 141, 147 (2d Cir. 2020) ("[P]ast purchasers of a consumer product who claim to be deceived by that product[] . . . have, at most, alleged a past harm.").

## IV.    CONCLUSION

For all the reasons above, the SAC should be dismissed. Because Plaintiffs have been afforded multiple opportunities to amend (including after the Court's ordered deadline for amendments expired (D.E. 28, 43, 45)), leave to amend should be denied. *See, e.g.*, *Burke v. Custom Marine Grp.*, 847 F. App'x 578, 582 (11th Cir. 2021) ("In light of Burke's failure to cure his pleadings' deficiencies after multiple opportunities, the district court did not abuse its discretion in dismissing his second amended complaint without leave to amend."); *Brown v. Dep't of Health*, 2013 WL 12090614, at *5 (M.D. Fla. June 20, 2013) (denying further leave to amend "[g]iven Plaintiff's multiple opportunities to sufficiently set forth her allegations").

## LOCAL RULE 3.01(g) CERTIFICATION

This certifies under Local Rule 3.01(g) that Hyundai's counsel conferred with Plaintiffs' counsel by telephone about this Motion. Plaintiffs oppose the Motion.

20

Dated: December 19, 2022        Respectfully submitted,

By: *s/ Robert J. Herrington*
      I. William Spivey, II (Florida Bar No. 701076)
      Email: spiveyw@gtlaw.com
      Colin Baker (Florida Bar No. 0066352)
      Email: bakerco@gtlaw.com
      **GREENBERG TRAURIG, P.A.**
      450 South Orange Ave., Ste. 650
      Orlando, Florida 32801
      Telephone: (407) 420-1000

      Robert J. Herrington (admitted *pro hac vice*)
      Email: herringtonr@gtlaw.com
      Michael E. McCarthy (admitted *pro hac vice*)
      Email: mccarthyme@gtlaw.com
      **GREENBERG TRAURIG, P.A.**
      1840 Century Park East, Ste. 1900
      Los Angeles, CA, 90067
      Telephone: (310) 586-7700
      *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 19, 2022, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** through the Court's CM/ECF system, which will send an electronic copy to the following:

Jeffrey L. Haberman
**SCHLESINGER LAW OFFICES, PA**
1212 SE 3rd Avenue
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Email: jhaberman@schlesingerlaw.com
*Counsel for Plaintiffs*

*s/ Robert J. Herrington*
Robert J. Herrington

22