UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KRIS JARRELL, ROBERT
BOMER, KATHLEEN FALVO,
ANTHONY JOSEPH and
NATHANIEL SEGURA,**

        **Plaintiffs,**

**v.**                                **Case No.  6:22-cv-990-CEM-EJK**

**HYUNDAI MOTOR COMPANY,
HYUNDAI MOTOR
MANUFACTURING ALABAMA
LLC, and HYUNDAI MOTOR
AMERICA,**

        **Defendants.**
_____/

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Second Amended Complaint ("Motion to Dismiss," Doc. 49), to which Plaintiffs filed a Response in Opposition (Doc. 54) and Defendants filed a Reply in Support (Doc. 58). Also before the Court is Defendants' Request for Judicial Notice ("Motion for Judicial Notice," Doc. 50) and Plaintiffs' Response (Doc. 55). For the reasons stated herein, the Motions will be granted.

### I.    BACKGROUND

This action arises from a safety recall of Hyundai vehicles potentially equipped with defective seatbelt pretensioners. (Second Am. Compl., Doc. 46, at 2). Plaintiffs are individuals that own 2021 or 2022 Hyundai Elantras, which are among the Hyundai vehicles impacted by the recall. (*Id.* at 3–6). Defendants are Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), and Hyundai Motor Manufacturing Alabama, LLC ("HMMA"). (*Id.* at 6–7). HMC is the parent corporation of HMA and HMMA. (*Id.*). HMA is "responsible for manufacturing, assembling, importing, marketing, advertising, distributing, selling, leasing, warranting, and servicing Hyundai vehicles in the United States." (*Id.*). HMMA manufactures and assembles Hyundai Elantras, among other Hyundai vehicles. (*Id.*).

It is undisputed that the National Highway Traffic Safety Administration ("NHTSA") informed Defendants of a crash incident in September 2021 where a "pretensioner deployed abnormally, propelling metal fragments through the cabin of the" vehicle. (*Id.* at 2). But Plaintiffs allege that "Defendants knew or should have known of the [defect] much earlier due to pre-production testing, failure mode analysis, and reports to authorized dealers, repair centers, and complaints to the NHTSA," and that Defendants concealed information regarding the defect and delayed issuing a recall. (*Id.* at 2–3). Plaintiffs further allege that if not for Defendants' "unfair, misleading, deceptive, and/or fraudulent business practices,"

Plaintiffs "would not have purchased or leased those vehicles, or would have paid substantially less for them." (*Id.*).

Plaintiffs filed a Second Amended Class Action Complaint ("SAC") on behalf of themselves and "all persons similarly situated who have purchased or leased" the Hyundai vehicles subject to the pretensioner defect recall, which are 2019–2022 Hyundai Accents, 2021–2023 Hyundai Elantras, and 2021–2022 Hyundai Elantra Hybrids ("Class Vehicles"). (*Id.* at 3–4). Plaintiffs further organize the proposed class by the state in which the Class Vehicle was purchased or leased, limited to Florida, New York, and Illinois. (*Id.* at 18–19). Plaintiffs bring three state specific claims: Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. § 501.201, *et seq.*, on behalf of the Florida Class (Count I), (*id.* at 24–29); Violation of New York General Business Law ("NYGBL"), N.Y. Gen. Bus. Law § 349, on behalf of the New York Class (Count II), (*id.* at 29–33); and Violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* and 720 ILCS 295/1A, on behalf of the Illinois Class (Count III), (*id.* at 34–37). Defendants move for dismissal of the claims against them, arguing that the claims are moot, that Plaintiffs lack standing, and for failure

to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), respectively.[1] (*See generally* Doc. 49).

## II.    MOTION FOR JUDICIAL NOTICE

As an initial matter, Defendants request that the Court take judicial notice of the facts contained in certain records disseminated by the NHTSA regarding the recall at issue in consideration of their Motion to Dismiss.[2] (*See generally* Doc. 50). Plaintiffs filed a response indicating no opposition to the requested relief. (Doc. 55 at 1). The proposed documents are recall reports and attachments to those reports, (collectively, "Recall Documents"), which can be found on NHTSA's website. *See Part 573 Safety Recall Report No. 22V-354* (July 2, 2022), https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V354-9759.PDF; *Recall 229 Attachment A* (July 1, 2022), https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V354-9841.pdf; *Part 573 Safety Recall Report No. 22V-354* (May 19, 2022, https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V354-9112.PDF; *Recall 229 Attachment A* (May 19, 2022), https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V354-7726.pdf; *Important Safety Recall Letter*,

---

[1] Defendants argue that Plaintiffs lack standing to pursue a request for injunctive relief, (Doc. 49 at 19–20), but in their Response, Plaintiffs "consent[ed] to the dismissal [of] any request seeking injunctive relief," (Doc. 54 at 5 n.2). Thus, the Court will not address this argument further.

[2] The Court notes that "[i]f a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Chapman v. Abbott Lab'ys*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010)).

https://static.nhtsa.gov/odi/rcl/2022/RCONL-22V354-1959.pdf; *Recall Quarterly Report* (October 27, 2022), https://static.nhtsa.gov/odi/rcl/2022/RCLQRT-22V354-6070.PDF.

Federal Rule of Evidence 201 instructs that a court "may judicially notice a fact that is not subject to reasonable dispute" if the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006). It is also "established law that a court may take judicial notice of government websites." *Lamonte v. City of Hampton, Ga.*, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) (collecting cases). Accordingly, the Court will grant Defendants' Motion for Judicial Notice. The Court takes judicial notice of the Recall Documents and information contained therein because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

### III. MOTION TO DISMISS

#### A. Legal Standards

##### 1. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss the claims against it for "lack of subject-matter jurisdiction." "Attacks on

subject matter jurisdiction . . . come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia*, 104 F.3d at 1260–61 (quoting *Lawrence*, 919 F.2d at 1528–29). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "When jurisdiction is properly challenged, a plaintiff has the burden of showing jurisdiction exists." *Kruse, Inc. v. Aqua Sun Invs., Inc.*, No. 6:07-cv-1367-Orl-19UAM, 2008 U.S. Dist. LEXIS 7066, at *4 (M.D. Fla. Jan. 31, 2008).

  2. *Rule 12(b)(6)*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Ordinarily, in deciding a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

### B.    Analysis

Defendants argue that the SAC is prudentially moot and should be dismissed because Defendants' recall program already provides meaningful relief to Plaintiffs. (Doc. 49 at 7–9). Alternatively, Defendants argue that Plaintiffs' claims should be narrowed just to the vehicles that they purchased or leased because Plaintiffs lack standing on claims for other vehicles. (*Id.* at 9–10). Finally, Defendants argue that Plaintiffs' statutory consumer fraud claims fail to meet the pleading standards of Federal Rules of Civil Procedure 8 and 9. (*Id.* at 10).

---

[3] Interestingly, in their legal standard section, Plaintiffs rely on *Conley v. Gibson*, 355 U.S. 41 (1957), and other pre-*Twombly*/*Iqbal* cases, (Doc. 54 at 4), all of which have not been the correct legal standard on this issue for over sixteen years.

### 1. *Mootness*

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768 (11th Cir. 2006) (citing U.S. Const. art. III, § 2). "[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010) (quoting *Church of Scientology of Ca. v. United States*, 506 U.S. 9, 12 (1992)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216 (11th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L. Ed. 2d 491 (1969)). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Id.* (quoting *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)).

However, Defendants do not assert that Plaintiffs' claims have been rendered moot in the constitutional sense. Instead, Defendants rely on a concept coined "prudential standing." (Doc. 49 at 7). Under this concept, even if a case is not "technically moot," it may be "treated as such for prudential reasons." *Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 962 (11th Cir. 2012). As

an initial matter, it is unclear whether this doctrine applies in cases involving monetary relief rather than declaratory or equitable relief. *See id.* at 962–63 (applying this concept in a declaratory judgment context and referencing the court's ability to decline to exercise jurisdiction in such cases); *Chamber of Com. v. United States Dep't of Energy*, 200 U.S. App. D.C. 236, 627 F.2d 289, 291 (1980) (applying this doctrine in the context of a request for declaratory judgment and injunctive relief and noting that "[t]he cousin of the mootness doctrine, in its strict Article III sense, is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration"). Indeed, "[t]he Eleventh Circuit has not yet addressed the question of whether the prudential mootness doctrine applies to claims seeking monetary relief." *Ward-Richardson v. FCA US LLC*, Civil Action No. 2:21-CV-235-RWS, 2023 U.S. Dist. LEXIS 158569, at *8–9 (N.D. Ga. Sep. 6, 2023).

Additionally, it is not clear which standard—12(b)(1) or 12(b)(6)—applies to this analysis. Defendants summarily assert that 12(b)(1) applies but do not explain their reasoning. (*See* Doc. 49 at 1, 6–7). Nevertheless, because Defendants present a facial, rather than factual attack, there is not a meaningful difference between the standards as applied here. Thus, even assuming the prudential mootness doctrine applies and it is analyzed under 12(b)(1), Defendants have not shown that Plaintiffs claims must be dismissed thereunder.

The doctrine of prudential mootness can apply where "a controversy that has become 'so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Ingaseosas*, 479 F. App'x at 962 (quoting *Chamber of Com.*, 627 F.2d at 291). "The critical question becomes 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" *Id.* at 962–63 (quoting *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987)).

Defendants argue that since their NHTSA-regulated recall program repairs the defects for free and reimburses for out-of-pocket expenses, Plaintiffs have already been provided a meaningful remedy that moots their claims. (Doc. 49 at 7); *see Part 573 Safety Recall Report No. 22V-354* (July 2, 2022), https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V354-9759.PDF (describing the remedy program). Defendants cite cases from other circuits in which the courts found plaintiff car owners' claims to be rendered moot by the remedial actions of the defendant car manufacturers.[4] (Doc. 49 at 7–8 (collecting cases)).

In *Hadley v. Chrysler Group, LLC*, the Sixth Circuit held that because the repair that the "plaintiffs received removed the defect upon which the plaintiffs'

---

[4] Defendants cite to *Winzler* and *Cheng* for support, in which the plaintiffs did not seek compensatory damages but only requested declaratory and injunctive relief for a court-ordered recall. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1209–10 (10th Cir. 2012); *Cheng v. BMW of N. Am., LLC*, No. cv 12-09262 GAF SHX, 2013 WL 3940815, at *4 (C.D. Cal. July 26, 2013). Thus, *Winzler* and *Cheng* are readily distinguishable and inapposite from the facts of the instant case.

diminished-value injury claim [was] based," the lower court's "conclusion that the plaintiffs presented no evidence of diminished value in light of the repair [was] not clearly erroneous." 624 F. App'x 374, 378 (6th Cir. 2015). Defendants also rely on district court cases that apply *Hadley* in similar circumstances. *See Sharp v. FCA US LLC*, 637 F. Supp. 3d 454, 469 (E.D. Mich. 2022); *Sugasawara v. Ford Motor Co.*, No. 18-cv-06159-LHK, 2019 WL 3945105, at *6–7 (N.D. Cal. Aug. 21, 2019).

These cases are unpersuasive given precedent from district courts within the Eleventh Circuit that a car manufacturers' remedial actions do not moot car owners' claims if their claims exceed the scope of the remedy. *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1219–20 (S.D. Fla. 2017) (holding that *Hadley* does not support dismissal of the plaintiffs' claims for "lost benefit of the bargain [and] diminished value of their [d]efective [v]ehicles"); *McCabe v. Daimler Ag*, No. 1:12-cv-2494-MHC, 2015 WL 11199196, at *5 (N.D. Ga. Aug. 19, 2015) ("Given that the extended warranty offered by [defendant] does not provide [p]laintiffs with complete relief in this case, the Court declines to exercise its discretion to dismiss [p]laintiffs' claims under the doctrine of prudential mootness."); *Rosen v. Mercedes-Benz USA, LLC*, No. 1:21-cv-00787-WMR, 2022 WL 20766104, at *2 (N.D. Ga. Nov. 1, 2022) ("Because [p]laintiffs sufficiently allege claims for damages not covered by the Program, their claims are not moot.").

Here, Plaintiffs have alleged that they were misled into purchasing a vehicle that they would not have purchased or would have paid less for had they known of the pretensioner defect. (Doc. 46 at 4–6). Plaintiffs seek to be reimbursed for the diminished value of their vehicles and to recover from economic injuries from not receiving the safe car that they bargained for on the date of purchase. (*Id.* at 18). Therefore, even if Defendants' recall program is sufficient to repair the pretensioner defect and reimburse out-of-pocket expenses, "Plaintiffs may still be able to recover economic losses should their claims succeed." *Leon*, 301 F. Supp. 3d at 1220. Thus, Plaintiffs' claims exceed the scope of the recall program and are not mooted by it.

To the extent Defendants argue that Plaintiffs have failed to sufficiently allege diminution in value damages, that is more properly analyzed as a failure to state a claim argument and will be addressed below.

### 2. *Standing*

Next, Defendants argue that Plaintiffs do not have standing to bring class claims for vehicles that they did not purchase. As such, Defendants argue that Plaintiffs' "claims should be narrowed to the vehicles Plaintiffs allegedly bought or leased." (Doc. 49 at 9). Standing implicates subject matter jurisdiction, and therefore, "[a] motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1)." *Radenhausen v. USCG*, No. 3:13-cv-268-J-39JRK, 2014 U.S. Dist. LEXIS 198128, at *10 (M.D. Fla. Feb. 13, 2014) (citing

*Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003));

*Parrales v. Dudek*, No. 4:15cv424-RH/CAS, 2015 U.S. Dist. LEXIS 189205, at *11

(N.D. Fla. Dec. 24, 2015). As noted above, motions pursuant to Rule 12(b)(1) can

be facial or factual attacks. Here, Defendants only appear to mount a facial attack.

To establish Constitutional, or Article III, standing, a plaintiff must show: "1)

that [it] personally has suffered an actual or prospective injury as a result of the

putatively illegal conduct; 2) that the injury can be fairly traced to the challenged

conduct; and 3) that the injury is likely to be redressed through court action." *Saladin*

*v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987). "[J]ust as a plaintiff

cannot pursue an individual claim unless he proves standing, a plaintiff cannot

represent a class unless he has standing to raise the claims of the class he seeks to

represent." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1288 (11th

Cir. 2001). "This individual injury requirement is not met by alleging that injury has

been suffered by other, unidentified members of the class to which the plaintiff

belongs and which he purports to represent." *Griffin v. Dugger*, 823 F.2d 1476, 1483

(11th Cir. 1987) (cleaned up); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)

("Nor does a plaintiff who has been subject to injurious conduct of one kind possess

by virtue of that injury the necessary stake in litigating conduct of another kind,

although similar, to which he has not been subject.").

Plaintiffs argue that they are permitted to bring claims for products they did not purchase because there is "sufficient similarity between the products purchased and not purchased." (Doc. 54 (quoting *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. c-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012)). However, "this 'sufficient similarity' argument has not been adopted in the Eleventh Circuit." *Leon*, 301 F. Supp. 3d at 1221 (collecting cases). "[I]n the Eleventh Circuit, a named plaintiff in a consumer class action cannot raise claims relating to products which she herself did not purchase." *Bohlke v. Shearer's Foods, LLC*, No. 9:14-cv-80727, 2015 WL 249418, at *4 (S.D. Fla. Jan. 20, 2015). "Many courts in this district have examined this exact issue in great depth and concluded that the plaintiffs did not have standing to bring claims for products that they did not purchase." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 347 F. Supp. 3d 1207, 1219–20 (S.D. Fla. 2018) (collecting cases).

Plaintiffs also rely on *Randolph v. J.M. Smucker Company*, which deferred ruling on a similar standing issue until the Rule 23 class certification arguments on typicality or adequacy. No. 13-80581-CIV, 2014 WL 1018007, at *6 (S.D. Fla. Mar. 14, 2014). The sole case that the *Randolph* Court relied on was an out-of-circuit district case that applied the "sufficiently similarity" analysis. *Id.* (citing *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012)). Because that analysis is inapplicable here, and standing is a threshold jurisdictional issue, the

Court sees no basis to defer ruling. *See Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253 (11th Cir. 2023) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000)). Accordingly, Plaintiffs' claims will be narrowed to just those that relate to the 2021 or 2022 Hyundai Elantra.

### 3. Failure to State a Claim

Pursuant to Rule 8(a)(2), a pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition to the plausibility requirement under Rule 8, pleadings that assert claims sounding in fraud are also subject to a heightened pleading requirement under Rule 9(b), which is to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendants argue that the SAC fails to meet the pleading standards of Rules 8 and 9 by not providing any plausible allegations of wrongful conduct by Defendants. (Doc. 49 at 11). Plaintiffs argue that Rule 9(b) does not apply to their claims but that, even if it did, their claims meet that standard. (Doc. 54 at 15).

### a. Applicable Legal Standard

Before addressing Defendants' arguments for dismissal, the Court must determine whether Rule 9(b) applies in addition to Rule 8. Defendants argue that the Court should apply the heightened standard of Rule 9(b) to Plaintiffs' FDUPTA, NYGBL, and ICFA claims because they are all "grounded in fraud." (Doc. 49 at 11). Plaintiffs argue that the "weight of authority holds" that Rule 9(b) should not apply to FDUPTA and NYGBL claims. (Doc. 54 at 13–14).[5]

As an initial matter, to support its holding that Rule 9(b) does not apply to Plaintiffs' NYGBL claim, Plaintiffs cite case law from the Second Circuit, the circuit in which New York sits. Admittedly, the Second Circuit appears to have determined that the relevant section of the NYGBL "is not subject to the pleading-with-particularity requirements of Rule 9(b)." *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). However, because the application of the Federal Rules of Civil Procedure is procedural, rather than substantive, "this Court must apply the federal law of the circuit in which it sits." *Earth Pipeline Servs. v. Columbia Gas Transmission, LLC (In re Welded Constr., L.P.)*, Nos. 18-12378, 19-50274 (CSS), 19-50275 (CSS), 2021 Bankr. LEXIS 2259, at *13 n.58 (Bankr. D. Del. Aug. 19, 2021) (citing *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015)); *see also Cyntec Co. v. Chilisin Elecs. Corp.*, 84 F.4th 979, 987 (Fed. Cir. 2023) (explaining in an

---

[5] Although Plaintiffs do not explicitly address it, the Court presumes that Plaintiffs also want the Court to conclude that Rule 9(b) does not apply to their ICFA claim.

analogous situation where the Federal Circuit has exclusive jurisdiction over appeals in patent matters, it applies "regional circuit law to procedural issues" that do not implicate substantive law). Thus, to the extent the Eleventh Circuit's interpretation of Rule 9(b)'s application differs from that of the Second Circuit, this Court must defer to the Eleventh Circuit.

In the Eleventh Circuit, Rule 9(b)'s heightened pleading standard applies to claims that "sound[] in fraud." *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) ("Rule 9(b) applies to an ACFA claim because such a claim sounds in fraud."); *see, e.g.*, *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019) ("Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims asserted under Florida law because such claims sound in fraud."); *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010) ("Because Rule 10b–5 [of the Securities Act] sounds in fraud, the plaintiff must plead the elements of its violation with particularity."). However, the Eleventh Circuit has not addressed whether Rule 9(b) applies to state consumer protection laws, and "[t]here is some disagreement in the case law concerning [its] applicability." *Marty v. Anheuser-Busch Companies*, LLC, 43 F. Supp. 3d 1333, 1338 (S.D. Fla. 2014) (declining to decide the issue because plaintiffs' claims met the requirements of Rule 9(b)).

For FDUPTA claims, the trend in this District "is to apply the Rule 9(b) standard when [the] claims sound in fraud." *Inouye v. Adidas Am., Inc.*, No. 8:22-cv-416-VMC-TGW, 2023 WL 2351654, at *3 (M.D. Fla. Mar. 3, 2023); *see also Total Containment Sols., Inc. v. Glacier Energy Servs., Inc.*, No. 2:15-cv-63-FTM-38CM, 2015 WL 3562622, at *2 (M.D. Fla. June 5, 2015) ("Absent an allegation of fraudulent conduct, a FDUTPA claim does not need to meet Rule 9(b)'s heightened-pleading requirement."); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-J-20JBT, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("[T]he Middle District of Florida has consistently held that those FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements.").

"Moreover, the Court finds persuasive the Seventh and Ninth Circuits' application of Rule 9(b) to . . . consumer protection laws similar in nature to FDUPTA." *Casey v. Fla. Coastal Sch. of L., Inc.*, No. 3:14-cv-01229, 2015 WL 10818746, at *1 (M.D. Fla. Sept. 29, 2015) (citing *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). In the Seventh Circuit, if the consumer fraud claim "rests on allegations of deceptive conduct, then Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). In

the Ninth Circuit, "[a] plaintiff may allege a unified course of fraudulent conduct [in a consumer protection claim] and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Therefore, to decide whether to apply Rule 9(b) to Plaintiffs' claims, the Court will inquire if "the gravamen of the claim[s] sounds in fraud." *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-OC-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012).

At the outset, the Court notes that all three state specific claims "re-allege[] and incorporate[] by reference" the same allegations, (*see* Doc. 46 at 24, 30, 34), but to the extent that the claims differ, the Court will discuss each in turn. Plaintiffs allege that "[i]n violation of FDUPTA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission." (*Id.* at 25). Similarly, Plaintiffs allege that "Defendants violated the NYGBL by engaging in deceptive acts or practices" which "knowingly concealed, suppressed and/or omitted material facts regarding the [pretensioner defect]." (*Id.* at 30). Finally, Plaintiffs allege that "Defendants violated the ICFA by knowingly and intentionally misrepresenting, omitting, concealing,

and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Vehicles." (*Id.* at 34). Plaintiffs' FDUPTA claim expressly alleges fraud, and all three claims are based in allegations of knowing, intentional misrepresentations and concealment—thus, all three claims sound in fraud. *See Young*, 57 F.4th at 875 (11th Cir. 2023) (finding that claims for intentional misrepresentation sound in fraud); *Fickes v. Volkswagen Grp. of Am.*, No. 6:11-cv-1614-Orl-22DAB, 2012 U.S. Dist. LEXIS 205724, at *7 (M.D. Fla. May 2, 2012) (determining that claims sounded in fraud where the plaintiffs alleged that the defendant "knew about [a] defect, [and] knowingly concealed the defect through omissions and affirmative misrepresentations"). Accordingly, all of Plaintiffs' claims must comply with the heightened pleading standard of Rule 9(b).

"The particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (quoting *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)). "Under Rule 9(b), claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs.*, LLC, 32 F.4th 1298, 1307 (11th Cir. 2022). Additionally, "the plaintiff who pleads fraud must 'reasonably notify the

defendants of their purported role in the scheme.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)).

b.    Sufficiency of Pleadings

"To state an FDUTPA claim, [a plaintiff] must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). "To make out a prima facie case under [section 349 of the NYGBL], a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank*, N.A., 85 NY2d 20, 25 (1995)). For an ICFA claim a "plaintiff must prove that (1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir 2015) (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 500, 675 N.E.2d 584, 593 (1996)). Plaintiffs allege that Defendants violated

these statutes by making fraudulent misrepresentations and omissions. Each will be addressed in turn.

### i.   Omissions

First, to the extent Plaintiffs allege that Defendants engaged in a deceptive act via omissions and concealment, those claims are premised on the theory that Defendants knew or should have known of the seatbelt pretensioner defect, intentionally did not disclose the existence of the defect, and actively concealed its existence. As to the allegations that Defendants "should have known" about the defect, this allegation is completely conclusory and not supported by any factual allegations. Even under the lesser Rule 8 standard, such a bare assertion fails. *See CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 21-11183, 2022 U.S. App. LEXIS 21039, at *11–12 (11th Cir. July 29, 2022) (affirming the dismissal of a FDUTPA claim where the complaint "relied on conclusory allegations that [the defendant] knowingly and willfully" acted, noting "'thread-bare recitals' of unfairness 'supported by mere conclusory statements, do not suffice'" (quotation omitted)).

As to Defendants' actual knowledge, a review of the timeline of events is necessary. There are no factual allegations to support any knowledge on the part of any Defendant prior to September 15, 2021. On that date, Plaintiffs allege that HMA was informed of a single incident where a seat belt pretensioner in a 2021 Hyundai Elantra deployed abnormally. (Doc. 46 at 13 (relying on the May 19, 2022 National

Highway Traffic Safety Administration Chronology of Events ("NHTSA Chronology"), https://static.nhtsa.gov/odi/rcl/2022/RMISC-22V354-7726.pdf)). On October 6, 2021—approximately three weeks after learning of the first pretensioner incident—HMA issued a recall of all vehicles equipped with pretensioners within the same production lot. (Doc. 46 at 14; NHTSA Chronology at 1). There are no allegations that any additional information was relayed to any Defendant until December 3, 2021, when HMC was notified of a second incident where a pretensioner deployed abnormally in a 2020 Hyundai Accent. (Doc. 46 at 14; NHTSA Chronology at 1). Presumably, HMA was also notified because approximately one week later, HMA expanded the recall to include vehicles with pretensioners from that production lot. (Doc. 46 at 14; NHTSA Chronology at 1). On February 15, 2022, HMC and HMA were notified of a third incident where a pretensioner in a 2022 Hyundai Elantra from a different production lot deployed abnormally. (Doc. 46 at 14; NHTSA Chronology at 2). Nine days later, HMA issued a recall for the vehicles from that lot. (Doc. 46 at 14; NHTSA Chronology at 2). HMA continued to investigate the pretensioner issues, and on March 25, 2022, it proactively increased the pool of recalled vehicles in an attempt to determine the root cause of the abnormal deployment. (Doc. 46 at 15; NHTSA Chronology at 2). By May 11, 2022, after conducting their own testing and retaining a third-party engineering firm, HMA and HMC determined a possible cause and potential remedy

for the defect, and HMA issued a recall of all vehicles equipped with the subject pretensioner. (Doc. 46 at 15–16; NHTSA Chronology at 2–3).

Based on Plaintiffs' own allegations, there is no basis to conclude that Defendants intentionally concealed any information. First, there are no allegations pertaining to HMMA—there is simply no basis in the SAC to conclude that HMMA had any knowledge about the defects much less that it actively concealed such information. As to HMA and HMC, as soon as they were apprised of any information, Plaintiffs allege that they were not only disclosing it but also issuing a recall. Plaintiffs assert that HMA and HMC's actions were insufficient to remedy their damages, but Plaintiffs cannot get to a damages analysis if they fail to allege a deceptive act. And there are simply no allegations that could support a reasonable inference that HMA and HMC concealed information when Plaintiffs themselves concede that HMA and HMC were quickly disclosing the information and issuing recalls based on the information they had at the time. *See Small v. GM, LLC*, No. 21-81146-CIV, 2022 U.S. Dist. LEXIS 93049, at *21 (S.D. Fla. May 24, 2022) (determining that the plaintiff failed to state a claim for concealment under FDUTPA where the defendant "made public disclosures to acknowledge and address problems with the vehicles"); *Krause v. GE Cap. Mortg. Servs.*, 731 N.E.2d 302, 311 (Ill. App. Ct. 2000) (affirming the granting of summary judgment on an ICFA concealment claim where the evidence showed that the defendant disclosed all material facts).

Moreover, even if the above allegations were sufficient to establish that HMA and HMC concealed the alleged defects during the timeframes between when they knew about the defect prior to the recalls, the SAC does not include dates of Plaintiffs' purchases. (Doc. 46 at 18). As noted above, Plaintiffs' own allegations establish that each disclosure occurred days or weeks after HMA and HMC learned about the pretensioner incidents, and there is no indication that Plaintiffs purchased their vehicles during those timeframes.[6] As such, Plaintiffs have failed to sufficiently allege that their damages were caused by any purported omission or concealment. Plaintiffs have failed to state a claim under any of the relevant statutes based on allegations of omissions or concealment.

### ii.    Misrepresentations

As to the alleged misrepresentations, Plaintiffs allege that Defendants engaged in a deceptive act by making misrepresentations in advertisements stating that the Class Vehicles were safe. Defendants argue that the SAC fails to allege such misrepresentations with particularity by leaving out essential details such as the content of any specific misrepresentation, who made it, when it was made, and how it was communicated. (Doc. 49 at 13). Plaintiffs have alleged specific advertisements and statements, including images of sample advertisements. (Doc. 46 at 8–10).

---

[6] This analysis remains true even if the alleged concealment occurred between September 2021 and May 2022 because there are no allegations that Plaintiffs purchased their vehicles during that timeframe.

However, Plaintiffs fail to allege the timeframe for these statements. Importantly, the only basis for Plaintiffs' conclusion that these advertisements were false or misleading is their allegation that the pretensioner defect makes the vehicles unsafe. However, the earliest possible existence of the pretensioner defect alleged by Plaintiff is 2019.[7] The only date given by Plaintiffs for any of the advertisements is 1999. Otherwise, Plaintiffs merely allege that these statements were made "in its more recent marketing." (*Id.* at 9). Such vague timeframe allegations are insufficient under Rule 9(b). *Nieto v. Perdue Farms, Inc.*, No. 08-07399, 2010 U.S. Dist. LEXIS 25256, at *10 (N.D. Ill. Mar. 17, 2010) ("While exact dates of each alleged misrepresentation are not required, providing such a vague time frame is insufficient to satisfy Rule 9(b)'s heightened pleading requirements."); *Altimas v. Whitney*, No. 2:09-cv-682-FtM-36SPC, 2010 U.S. Dist. LEXIS 149609, at *9 (M.D. Fla. Dec. 9, 2010) ("'[V]ague allegations' concerning the time period of a defendant's allegedly fraudulent conduct are insufficient to satisfy Rule 9(b)'s heightened pleading standard." (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005)).

Plaintiffs have also failed to sufficiently allege causation for at least a portion of their misrepresentation claims. It appears that Plaintiffs are advancing two theories of liability: first, that they were directly misled by the advertisements;

---

[7] As noted above, there are no allegations that any Defendant knew of any defect in 2019. But, the eventual recall included Defendants' vehicles manufactured in 2019, so construing the allegations in Plaintiffs' favor, it is a reasonable inference that the defect existed in 2019.

second, that even if they did not view the advertisements themselves, the advertising scheme falsely established that the vehicles were safe, which inflated the price of the vehicles in the marketplace, and Plaintiffs paid that inflated price but did not actually receive the benefit of the bargain because the vehicles were not safe. (*See, e.g.*, Doc. 46 at 8–11, 28–29).

In addressing the first theory, Defendants correctly point out that Plaintiffs do not allege that they ever saw any of the referenced advertisements. (Doc. 49 at 13). Plaintiffs attempt to focus on the fact that, in general, none of these claims require plaintiffs to show actual reliance on the statement to establish that it was deceptive. (Doc. 54 at 18); *see Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 985 (11th Cir. 2016) (FDUTPA); *Polvay v. FCTI, Inc.*, No. 22-cv-4315 (JSR), 2024 U.S. Dist. LEXIS 15399, at *6 (S.D.N.Y. Jan. 29, 2024) (NYGBL); *Acosta v. Hopper (USA), Inc.*, No. 22 C 3974, 2023 U.S. Dist. LEXIS 71764, at *5 n.2 (N.D. Ill. Apr. 25, 2023) (ICFA).[8] However, the issue of causation is separate from the issue of a deceptive act. *Polvay*, 2024 U.S. Dist. LEXIS 15399, at *7 ("[E]ven if reliance is not a required element of a claim under Section[] 349 [of the GBL], causation is.");

---

[8] The context of this clarification regarding reliance was to distinguish these statutory causes of action from common law fraud, which requires a showing of actual reliance in each of the relevant states. *Ash v. PSP Distribution, LLC*, 226 N.E.3d 748, 755 (Ill. App. Ct. 2023) ("Common-law fraud differs from fraud under the [ICFA] in that common-law fraud requires pleading actual reliance."); *Vice, Inc. v. Stapp*, 176 N.Y.S.3d 143, 145 (N.Y. App. Div. 2022) (including "justifiable reliance" as an element of common law fraud based on a material misrepresentation); *Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co.*, 32 F.4th 1298, 1307 (11th Cir. 2022) (listing reliance as an element of fraud under Florida law).

*Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1307 n.4 (11th Cir. 2023) (explaining that causation and reliance are two separate elements under FDUTPA).

Under Plaintiffs' theory that they were deceived by the misrepresentations, it is not possible to establish causation if the Plaintiffs never viewed the advertisements. *Kane v. Univ. of Rochester*, No. 23-cv-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *53 (W.D.N.Y. Mar. 19, 2024) (holding "a plaintiff must generally state in her complaint that she 'has seen the misleading statements of which [she] complains'" to establish causation under Section 349 of the NYGBL (quoting *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 530 (S.D.N.Y. 2018))[9]; *Pop v. Lulifama.Com LLC*, No. 8:22-cv-2698-VMC-JSS, 2024 U.S. Dist. LEXIS 48930, at *9 (M.D. Fla. Mar. 20, 2024) (determining that the plaintiff had "not sufficiently pled the 'causation' element of his FDUTPA claim" because he "failed to allege 'whether [he] viewed [the alleged misrepresentations] at all before purchasing the allegedly defective products.'" (quoting *PB Prop. Mgmt. v. Goodman Mfg. Co.*, No. 3:12-cv-1366-J-20JBT, 2013 U.S. Dist. LEXIS 200218, at *25 (M.D. Fla. Aug. 27, 2013)); *Disher v. Tamko Bldg. Prods.*, No. 14-cv-740-SMY-SCW,

---

[9] In both *Kane* and *O'Neill*, the courts made inferences that the plaintiffs had actually seen the statements despite the complaints not explicitly stating so or providing details. 2024 U.S. Dist. LEXIS 48515, at *54; 346 F. Supp. 3d at 531. However, those courts were analyzing the complaints under Rule 8, not the heightened pleading standard of Rule 9(b). 2024 U.S. Dist. LEXIS 48515, at *10–11; 346 F. Supp. 3d at 521–22. As discussed previously, this Court applies the Eleventh Circuit's procedural law, which applies Rule 9(b) to claims that sound in fraud. Thus, *Kane* and *O'Neill*'s further analysis of whether the plaintiffs sufficiently alleged that they viewed the statements is inapplicable.

2015 U.S. Dist. LEXIS 100453, at *14 (S.D. Ill. July 31, 2015) (determining that where the plaintiff did "not allege that he actually read or viewed [the alleged] misrepresentations" he failed "to satisfy the proximate causation element [under ICFA] as to those particular representations"). Thus, because Plaintiffs have not sufficiently alleged that they viewed any of the referenced advertisements, they have failed to establish causation as to the theory of being directly misled by the advertisements under FDUTPA, NYGBL, and ICFA.

As to the benefit of the bargain theory, a plaintiff may proceed under this type of theory without alleging that they personally viewed the allegedly deceptive statements if they sufficiently allege that the statements made the product more valuable than it would have been absent the statements. *Carriuolo*, 823 F.3d at 986–87; *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 394–95 (E.D.N.Y. 2021) ("A 'price premium' theory may suffice if the plaintiff alleges that he or she 'paid more than they would have for the good but for the deceptive practices of the defendant-sellers.'"); *Su Yeun Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("In the less typical case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197–98 (Ill. App. Ct. 2008)). However, Plaintiffs only vaguely allege that the misrepresentations caused a diminution in

value; they have failed to plead any facts sufficient to establish that these advertisements and statements caused them any damages. *See Lusby v. Hyundai Motor Co.*, No. 8:19-cv-1735-T-33TGW, 2020 U.S. Dist. LEXIS 266128, at *20 (M.D. Fla. Mar. 9, 2020) (determining that the plaintiffs did "not allege ultimate facts regarding their injury" where they did not allege, for example, "incurring repair costs, experiencing the engine defect, discontinuing use of their vehicle, decrease in Kelly Blue Book value, degradation of performance, incurring out-of-pocket expenses, loss of use, inability to re-sell their vehicle in the open market, or other facts about the market for their vehicles"); *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 08-22418-CIV, 2010 WL 528477, at *4 (S.D. Fla. Feb. 11, 2010) ("Here, there is absolutely no information given as to fair market value, attempts to sell, offers, or appraisals on value. There is simply an unsupported assertion that [the product] is worthless.").

Finally, Defendants argue that Plaintiffs refer to all three Defendants collectively and do not distinguish what specific conduct is attributable to what Defendant. As discussed above, the key basis underlying the Rule 9(b) pleading standard is that defendants are given notice "of their purported *role in the scheme*.'" *Brooks*, 116 F.3d at 1381 (quoting *Midwest Grinding*, 976 F.2d at 1020) (emphasis added). Therefore, "[i]f a plaintiff sues more than one defendant for fraud, the plaintiff cannot 'lump together' several defendants and allege generally the

defendants' participation in a fraud scheme." *United States ex rel. Schiff v. Norman*, No. 8:15-cv-1506-T-23AEP, 2018 U.S. Dist. LEXIS 258, at \*3 (M.D. Fla. Jan. 2, 2018) (collecting cases). However, a complaint may refer to multiple defendants together if the factual allegations make clear the respective roles that each defendant played. *Wyndham Vacation Ownership, Inc. v. US Consumer Attorneys, P.A.*, No. 18-81251-CIV- REINHART, 2019 U.S. Dist. LEXIS 226576, at \*16 (S.D. Fla. July 1, 2019). Here, the only allegations regarding the misrepresentations that differentiate Defendants are within the "parties" section of the SAC, which alleges generally the corporate areas of the Hyundai business that each Defendant is involved in. (Doc. 46 at 6–7). But the SAC wholly fails to explain with sufficient detail how each Defendant was involved in making the purported misrepresentations. Indeed, these allegations indicate that HMMA was not involved at all because it is alleged that HMMA's only functions are in "manufacturing and assembly." (*Id.* at 7). And yet, HMMA is lumped in with the other two Defendants as responsible for the allegedly misleading advertisements. Thus, Plaintiffs' claims for misrepresentations are also due to be dismissed on this basis. *See Leon*, 301 F. Supp. 3d at 1226 (holding that allegations that do not distinguish conduct of defendants are insufficient to meet the requirements of pleading standards); *Lane v. Cap. Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at \*5 (S.D.

Fla. Apr. 14, 2006) (dismissing complaint that "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").

## IV.   CONCLUSION

In accordance with the foregoing, Plaintiffs' claims are due to be dismissed. Additionally, this was Plaintiffs' third attempt to sufficiently allege their claims, and Plaintiffs did not request leave to amend. Therefore, Plaintiffs' claims will be dismissed with prejudice. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Lucas v. USAA Cas. Ins. Co.*, 716 F. App'x 866, 870 (11th Cir. 2017) ("Generally, the district court must give at least one chance to amend before dismissing with prejudice but need not give that chance when . . . "there has been . . . repeated failure to cure deficiencies by amendments previously allowed.").

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendants' Request for Judicial Notice (Doc. 50) is **GRANTED**.

2. Defendants' Motion to Dismiss Second Amended Complaint (Doc. 49) is **GRANTED**.

3. Plaintiffs' Second Amended Complaint (Doc. 46) is **DISMISSED with prejudice**.

**DONE** and **ORDERED** in Orlando, Florida on March 27, 2024.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record